# McCravey's Adm'r *v.* Todd.

*Bill in Equity by Creditor, to enforce Charge on Lands of Wife after Husband's Death.*

1.  *Wife's statutory separate estate ; for what debts liable.*—The statutory separate estate of a married woman is not liable (Code, § 2711) for the price or value of "lumber and labor in building and repairs on" the family residence, a part of her property ; nor is a liability fastened on her estate by a bond, or note under seal, given by her and her husband, founded on such claim.

2.  *Same ; remedy against.*—The statutory remedy against the wife's statutory separate estate, for debts chargeable on it by law (Code, §§ 2711-12), must be pursued during the life of the husband ; and when the creditor has failed to pursue this remedy, he can not, after the death of the husband, fasten a charge on her property by bill in equity, because she made his claim for labor and repairs available in a contest with other creditors, and was allowed the benefit of it.

3.  *Wife's equitable separate estate ; how created, or charged.*—A deed by which property is conveyed to a married woman, "to her sole and separate use, and as her sole and separate property in fee simple," creates in her an equitable separate estate, which she may charge by any contract that would bind her if a *femme sole* ; and her bond, or note under seal, executed jointly with her husband, is a charge on it.

4.  *Same ; purchase under consent decree in chancery.*—When a married woman holds property under a deed which creates in her an equitable separate estate, and the creditors of the grantor seek, by bill in equity, to set aside the deed on the ground of fraud ; if the creditors obtain a decree setting aside the deed, and subjecting the property to sale for the payment of their debts, and the grantee becomes the purchaser at the register's sale, she afterwards holds under that purchase, and not under the terms of the deed, and the property can not be subjected by her creditors as an equitable separate estate ; but, where the creditors' suit is compromised, a decree being rendered for an agreed amount, the property sold for that sum, the grantee becoming the purchaser, and giving a mortgage on the property to secure it, all this being done by consent, the title of the grantee is not thereby affected, so far as the rights of third persons are concerned : she holds under the deed as before, subject to the mortgage, and the property may be subjected by her creditors as an equitable estate.

APPEAL from the Chancery Court of Madison.
Heard before the Hon. H. C. SPEAKE.

The bill in this case was filed on the 9th February, 1878, by Leroy W. McCravey, as the administrator of the estate of Benjamin F. McCravey, deceased, against Mrs. Susan S. Todd and her two children, and sought to subject her interest in certain property, particularly described, to the satisfaction of a debt due to the estate of the complainant's intestate; and the partners composing the firm of S. J. Kennerly & Co., who were tenants of a part of the property, were also joined as defendants, and a garnishment prayed against them to subject the rents due. The property in controversy consisted of a house and lot in Huntsville which was the family residence of Mrs. Todd and her children, and a store-house and lot which was occupied by said Kennerly & Co. as her tenants. Both of these houses and lots had belonged to Daniel B. Turner, who was the father of Mrs. Todd, and who died on the 26th December, 1866. The lot on which the residence was situated was conveyed by said Turner, by deed dated the 27th October, 1865, to Mrs. Elizabeth Todd, of Lexington, Kentucky, on the recited consideration of $8,000; and by her conveyed, by deed dated the 14th November, 1865, in consideration of love and affection, to Mrs. Susan S. Todd and her two infant children, she being then the wife of David H. Todd, who was the son of Mrs. Elizabeth Todd, and who died in July, 1871. The other lot, on which the store-house was erected, was conveyed by said Daniel B. Turner, by deed dated the 26th March, 1866, to Mrs. Susan S. Todd, "to her sole and separate use, and as her sole and separate property, in fee simple"; the consideration, as recited, being "the agreement, covenant and promise of the said David H. Todd and Susan, his wife, to support, maintain and take care of the said" Turner, who was declared to be "paralytic and unable to provide for or take care of himself," "so long as he may live."

The debt asserted by the complainant, to the satisfaction of which he sought to subject this property, was for lumber furnished, and carpenter's work done by his intestate, during the year 1868, in repairs upon the said family residence, and the construction of a wing or addition to the house; and the bill alleged that these repairs and improvements were "necessary to the safety of the house, the side wall of which, against which said addition was built, threatening to fall down unless supported, and, in the opinion of experienced house-builders, would have tumbled down but for the support of said improvement." On the 26th June, 1868, on the completion of said improvements, Todd and his wife executed their bond, or note under seal, payable to said B. F. McCravey or order, for the amount of the debt, $491.45, specifying in the note that

its consideration was "value received of him lumber and labor in building and repairs on the former residence of D. B. Turner" in Huntsville; and this note was made an exhibit to the bill, which alleged, also, "that said work was done on the sole faith and credit of said real property," the husband of Mrs. Todd being then without any property, and so continuing until his death.

On the 31st May, 1869, S. D. Cabaniss, as the executor of the last will and testament of Samuel Townsend, deceased, filed a bill in said Chancery Court, against the administrator of the estate of said Daniel B. Turner, and against said David H. Todd, his wife and her two children; claiming to be a creditor of said Turner, on a debt contracted in 1860, and seeking to set aside, on the ground of fraud, the deeds under which Mrs. Todd held the dwelling-house and lot, as above described, and to subject the property to the payment of his debt. On the 28th June, 1869, a similar creditor's bill was filed by the Northern Bank of Alabama against the same parties, seeking to set aside, as fraudulent, the deeds under which both lots were held by Mrs. Todd, as above stated. The debt asserted by Cabaniss was evidenced by a bond, or note under seal, for $1,620, due the 4th December, 1861; and the debt of the Northern Bank was evidenced by a bill of exchange for $8,550, due 13th January, 1861. To these bills, as the bill in this case alleged, "answers and pleas were interposed by the said defendants," Mrs. Todd and her children, "denying all allegations of fraud, and Mrs. Todd setting up in her answers claims for repairs, as follows: 'For further answer respondent states, that long before the filing of complainant's bill in this cause, and without any knowledge or information that said deeds [were fraudulent], and without any suspicion of fraud in the execution of either of said deeds, and in the honest belief that said deeds were in all things fair, and that said property was justly and truly the property of herself and children, she erected on the said premises a large brick addition to the house, which cost her $3,500; and she has since expended other sums in repairs on the buildings, which cost her at least $1,000; and she therefore insists, whatever view this court may take of said deeds, she has a prior lien on said property, to be reimbursed the moneys so expended by her, with interest thereon.'"

Said two causes having been submitted, as the bill alleged, for final decree by the chancellor, a decree was rendered in each cause on the 26th February, 1874, which were stated to be as follows; "By the decree in the Cabaniss cause, his said claim was declared a legal and subsisting debt against the estate of said Turner at the time of the execution of the deeds

described in the bill in said cause ; said deeds were declared fraudulent, null and void, as against the creditors of the estate of said Turner ; and said lots, with the buildings thereon, condemned to be sold for the satisfaction and payment of said debt. It was further ordered and decreed, upon agreement of counsel in the cause, that the register should take and state an account, 1st, of the amount due on said bond, including interest ; and, 2d, of the value of all repairs and improvements made by said Susan S. Todd on the residence, between the date of said conveyance and the filing of the bill in said cause, and also the value of the rents of said lots and residence, due from her since the filing of the bill in said cause." A similar decree was rendered in the case of the Northern Bank, as set out in the bill ; " and by each of said decrees," it was alleged, "the register was ordered to report at the next term of said court."

From these decrees appeals were sued out, as the bill further alleged, by Mrs. Todd and her children ; " but, after said appeals were taken, and prior to the June term of said Chancery Court, 1874, said suits were compromised, upon the following basis : It was agreed that said appeals would be withdrawn ; that Mrs. Todd would pay said Cabaniss $3,000 for his said debt, and would secure the payment thereof by mortgage on said residence and lots embraced in his bill, and would pay said Northern Bank $3,000 for its said debt, and secure the payment thereof by mortgage on the property described in its bill ; that at the ensuing June term of said court, 1874, said causes should be referred to L. W. Cooper, as special register, to ascertain the value of the repairs and improvements made by Mrs. Todd on said residence and lots, and the value of the rents due from said Wilson and Herstein," tenants of the store-house, who were made defendants to the suit by the bank ; " and that a decree be made upon his report, directing that all of said property be sold by said special register, under the orders and decrees of said court in said two causes ; and that Mrs. Todd should become the purchaser at such sale, and execute the mortgages aforesaid. In pursuance of said agreement, said appeals were withdrawn, and said Cooper was, at the ensuing June term of said court, appointed special register in said two causes ; and upon the order referring them to him he made his report therein, by which it was ascertained that the amount due said Cabaniss, with interest, was $3,206.78 ; and that the amount due said bank, including interest and damages, was $17,708 ; and that the value of the repairs and improvements made by Mrs. Todd on said residence and lots was $4,000 ; and that the value of the rents of said residence and lots due from Mrs. Todd, from

the filing of the bill to the time of said reference, was $2,001.20, leaving a balance of $1,998.80 to be paid to her for said repairs and improvements; and that the balance of rents of said store-house and lots, due from said Wilson and Hernstein, was $790.46. Upon these reports, a decree was rendered in each of said causes. By the decree in the cause of said Cabaniss, it was ordered and adjudged ' that said defendant, Susan S. Todd, be allowed out of the proceeds of the sale of the property said value of the repairs and improvements, less said value of the rents, to-wit, $1,998.79 ; that said special register sell the lots and buildings thereon, described in said bill, and, out of the proceeds of sale, first pay the costs of this suit, and then to said Susan S. Todd the sum of $1,998.79, with interest from date, and then pay to complainant said sum of $3,206.79, and apply the balance, if any, to the satisfaction of the decree rendered against the defendants, in favor of the Northern Bank of Alabama, of date February 26, 1874.' By the decree in the cause of the Northern Bank, it was adjudged and decreed, ' that said bank recover of said Wilson and Herstein said sum of $790.46 ; and that to satisfy the balance of said debt, after deducting said sum of $790,46, to-wit, the sum of $16,918, said special register sell the lots and buildings thereon described in the bill, and, out of the proceeds of sale of said store-house and lots, first pay the costs of this suit, and the balance to said complainant; and out of the proceeds of sale of the other lots and buildings thereon, first pay the costs in the said suit by S. D. Cabaniss,' " &c., as in the decree rendered in that cause, " 'and the balance, if any, pay to complainant, to the extent of what may then be due on said balance of $16,918, with interest from date, and the residue, if any, pay to the said Susan S. Todd.' "

The bill alleged, also, that the special register sold the property under these decrees on the 20th July, 1874, and made report of the sale to the ensuing December term. "In his report in the cause of said Cabaniss, he states that he sold the residence and lots described in the bill in that case, at public sale in Huntsville, for cash; that Mrs. Todd became the purchaser at said sale, at the price of $5,215.65, she being the best and highest bidder; that she paid, of said purchase-money, the sum of $216.85, the costs of suit, and secured the payment of $3,000 to said Cabaniss by mortgage on the premises, which was accepted as a compliance with the terms of sale. In his report in the bank case, said special register states that, pursuant to said decree, he sold said store-house and lot, at public sale in Huntsville, for cash; that said Susan S. Todd became the purchaser at said sale, at the price of $3,189.79, she being the best and highest bid-

der therefor at that price; that she paid. of the purchase-money, $189.79, as costs in the cause, and secured the payment of $3,000 to said Northern Bank by her note and mortgage on the premises, which was accepted as a compliance with the terms of sale. These reports by said special register were in all things confirmed by the order of said court at its December term, 1874; all of which is more fully shown by the record and proceedings in said causes, reference to which is hereby prayed." Copies of the mortgages were annexed as exhibits to the bill, and also of the deeds executed by the special register to Mrs. Todd; but copies. of the proceedings in the two chancery suits, in reference to which the above allegations were made, are not set out.

The bill in this case, after stating the facts above quoted and set forth, contained also the following allegations: "Your orator charges that the debt, for the collection of which this suit is brought, is a part of the said $4,000 decreed to said Susan S. Todd in said causes for repairs and improvements, and which, by the decree of the court, was made a first charge upon said residence and lots adjoining, after payment of costs in said Cabaniss suit, and in equity and good conscience the court should now charge said residence and lots in the hands of said Susan S. Todd with the amount for which this suit is brought. The value of said store-house, at the date of said decree, was $10,000, and the value of said residence and lots was at least $10,000. The debt of said Cabaniss was $3,206.79, and the debt of said Northern Bank was $17,708; and by agreement of parties in said Cabaniss suit, a copy of which" was annexed as an exhibit, "the value of said store-house was fixed at $12,000. Your orator avers. that, in pursuance of said compromise, said Susan S. Todd got all of the rent admitted to be due by Wilson and Herstein, and applied $406.55 to the payment of costs in said two causes, as evidenced by an agreement, a copy of which is herewith filed" as an exhibit. "Complainant further avers, that the result of said suits was, as before alleged, a compromise of said claims, and the proceedings after the decree were in consummation of this compromise; that said litigation, as it resulted and was finally settled, did not have the effect to destroy or impair in any way the equitable right of your orator, or of his intestate, to subject the interest said Susan S. Todd had in said property before and after the final disposition of said causes, to the payment of the said debt for which this suit is brought; and that said compromise of said litigation was thus consummated by said Susan S. Todd for the purpose of hindering and delaying complainant's intestate, and of defeating him in the collection of his said debt. Complainant is informed

and believes, and upon such information and belief alleges the fact to be, that said mortgage to said Cabaniss has been by him transferred to" the two children of Mrs. Susan S. Todd, "who claim to hold it against said property; and complainant charges, that the money used in the purchase of said claim belonged to said Susan S. Todd, and was the proceeds of property belonging to her separate estate, which she owned at the time said debt was contracted for which this suit is brought, and upon the faith and credit of which the debt was contracted; and complainant charges, that said mortgage was thus procured by said Susan S. Todd to be transferred to her said daughters, for the purpose of hindering and delaying all her creditors, and complainant's intestate in particular." The bill therefore prayed that Mrs. Todd's interest in the property be subjected to the payment of the complainant's debt, and be sold for that purpose; that the rents be intercepted and applied for the same purpose; that the necessary accounts be taken, and for other and further relief under the general prayer.

The chancellor sustained a demurrer to the bill, and dismissed it for want of equity; and his decree is now assigned as error.

MILTON HUMES, for appellant.—1. *As to the liability of the store-house and lot,* which was conveyed by Turner directly to Mrs. Todd. The terms of the deed create in her an equitable separate estate, as to which she is regarded as a *femme sole,* having full power to charge it by her contracts.— *Gunter v. Williams,* 40 Ala. 561; *McCroan v. Pope,* 17 Ala. 612; *Bradford v. Greenway,* 17 Ala. 797; *Robinson v. O'Neal,* 56 Ala. 541; *Short v. Battle,* 52 Ala. 456. The proceedings in the two chancery suits, instituted by Cabaniss and the Northern Bank respectively, have no effect upon the title thus acquired. The deed from Turner was valid as between the parties, and as against all the world except creditors, who might charge the property with the payment of their debts, by proper proceedings within the period prescribed by law; and Mrs. Todd held the property, under the terms of the deed, subject to this liability. When the creditors obtained their decrees, subjecting the property to sale for the satisfaction of their debts, she might have paid off the decrees, and would then have held the property under the deed, as before. If the property had been sold under the decrees, and had brought more than the amount of the debts, she would have been entitled to the surplus, and would have held it under the deed, as an equitable estate, as she held the property itself. Ordinarily, as a general rule, a sale of property under a

(21)

decree in a foreclosure suit, or a suit like these, for the payment of the debt sought to be enforced, operates a divestiture of the title of the grantee. But such effect can not be attributed to the sale by the special register in this case. The whole litigation was compromised; and the sale was made, not to enforce the decree, but to effectuate the compromise. Such compromise and consent decree can not prejudice the rights of third persons, who were not parties to the suit. Besides, the bill alleges that the purpose of these proceedings, on the part of Mrs. Todd, was to prevent other creditors, and especially this complainant, from subjecting the property to the payment of their debts. A court of equity looks to the substance, not to the form of things, and will not suffer even a judicial proceeding in form to consummate or protect a fraud.—Bump on Bankruptcy, 6th ed., 383 ; *Martin v. Smith,* 4 B. R. 83 ; 3 A. L. T. 199 ; *Newlin v. McAfee,* 64 Ala. 357.

2. *As to the liability of the residence.*—The deeds under which this property is held created in Mrs. Todd a statutory separate estate. Statutory and equitable estates of married women, it is insisted, are both governed by the same principles and rules of construction ; that is, the statutory provisions are to be construed as similar provisions would be construed in a deed, will, or other instrument conveying property to a married woman. — *Warfield v. Ravesies,* 38 Ala. 521. The statutes were intended to create a trust estate for the benefit of the wife and family, throwing around it such safeguards as would best effectuate the purpose in view. The property thus held, the statute declares, "vests in the husband as trustee," and he "has the right to manage and control the same"; and the further provision which expressly charges it with debts contracted for necessaries, and provides a special remedy for the enforcement of such debts, does not deprive the property of the characteristics of a trust estate, nor prevent a creditor from subjecting it by equitable proceedings to the satisfaction of an equitable demand. The debt here sought to be enforced, it may be admitted, was not contracted "for articles of comfort and support of the household, for which the husband would be responsible at common law," as those terms have been judicially construed ; and if it were, the death of the husband would preclude a resort to the statutory remedy. But it was contracted, as the bill shows, by the husband as trustee, and by the wife as *cestui que trust,* for the erection of necessary repairs on the trust property— repairs which were indispensable and essential to its safety and preservation. A trustee, having a general power "to manage and control" the property, may contract for necessary repairs to it.—Hill on Trustees, 571, mar.; Perry on

[McCravey's Adm'r v. Todd.]

Trusts, §§ 912–13; *Fountain v. Pellett*, 1 Vesey, 337; *Webb v. Shaftsbury*, 7 Vesey, 480; *Riddle v. Mandeville*, 5 Cranch, 330; *McWhorter v. Benson*, 1 Hopk. Ch. 34; *Montgomery v. Everleigh*, 1 McCord, 267; *Cater v. Everleigh*, 4 Dess. 19; *Halloway v. Mayrant*, *Ib.* 591; *Ex parte Dowe*, 54 Ala. 258–61. The estate being liable to the trustee, and he being insolvent and dead, the creditor may proceed, in equity, directly against the trust estate.—*Coopwood v. Wallace*, 12 Ala. 790; *Mulhall v. Williams*, 31 Ala. 489.

This construction has been placed upon similar statutory provisions, creating and regulating the estates of married women, in New York, Indiana, North Carolina, New Jersey, and Pennsylvania, as shown by the following cases: *Colvin v. Currier*, 22 Barb. 371; *Dickerman v. Abrahams*, 21 Barb. 551; *L'Amoureux v. Van Rennsalaer*, 1 Barb. Ch. 34; *Maywood v. Johnson*, 1 Hill's Eq. 228; *Withers v. Sparrow*, 66 N. C. 129; *Peake v. LaBaw*, 6 C. E. Green, 269–82; *Armstrong v. Ross*, 5 *Ib.* 109; *Terry v. Hammonds*, 47 Cal. 32; *Lindley v. Cross*, 31 Indiana, 106; *Kantrowitz v. Prather*, *Ib.* 92; *Faulkner v. Colshear*, 39 Indiana, 201; *Moore v. McMillan*, 23 Indiana, 78; *Johnson v. Tutwiler*, 35 Indiana, 353; *Smith v. Howe*, 31 Indiana, 233; *Murray v. Keyes*, 11 Casey, Pa. 384; *Lippincott v. Hopkins*, 7 Smith, Pa. 328; *Lyon v. Swain*, 7 Phila. 154; 8 Casey, 432; *Mahon v. Gormley*, 12 Harr. Pa. 80; *Wood v. Sanchey*, 3 Daly, 197; 33 N. Y. 371.

But the complainant's right to subject this property to the payment of his debt, under the facts, does not depend alone upon this construction of the statute. In the suits by Cabaniss and the Northern Bank, seeking to subject the property to the payment of their debts, Mrs. Todd claimed and was allowed a credit for the cost or value of these repairs and improvements; and the credit thus claimed and allowed contributed to the payment of the purchase-money under the decree. She has thus received the benefit of moneys which, *ex æquo et bono*, belong to the complainant, and brought herself within the broad equitable principle applicable in such cases.—2 Story's Equity, §§ 1255, 1545; *Martin v. Branch Bank*, 31 Ala. 115; *Young v. Peachy*, 2 Atk. 256; Central Law Journal, August 9, 1878, p. 103; *Newton v. Jennings*, cited in Central L. J., April 12, 1878, p. 297; *Ib.* Sept. 6, 1878, p. 183; The Reporter, Feb. 13, 1878, p. 214; 7 Jur. N. S. 118.

WALKER & SHELBY, *contra.*—The residence can not be subjected to the payment of the complainant's demand, because of the character of the debt, and the death of the husband. *Lee v. Campbell*, 61 Ala. 12 ; *Lobman v. Kennedy*, 51 Ala. 163. The doctrine of subrogation can not be applied to the case.

*Fry v. Hamner*, 50 Ala. 52; Bispham's Pr. Eq. 312, § 335. The complainant can not work out an equity in his own favor, because his intestate's labor contributed to Mrs. Todd's purchase of the property.—*Riley v. Pierce*, 50 Ala. 93. The complainant's debt had no connection with the store-house and lot, and the bond (or note) given by Mrs. Todd and her husband does not show any intention to charge that property with its payment. If such an intention is to be presumed, on the ground that Mrs. Todd had an equitable estate in that house and lot, under the deed from her father; that presumption was overturned when the deed was declared void.—1 Bishop on Mar. Women, 861, 842. The decree setting aside the deed is conclusive as to its invalidity.—1 Brick. Dig. 725, § 1249. When property is sold under execution by the creditors of the grantor, it is not afterwards liable to the debts of the grantee.—Bump on Fraud. Con. 462.

STONE, J.—The relief claimed in the present suit assumes two aspects. We will first consider the question of the liability of Mrs. Todd's residence to the claim of complainant. When the materials and services were furnished by appellant's intestate, for the repairs and improvement of the dwelling-house, Mrs. Todd was a married woman, and her title to the property improved was her statutory separate estate. When she and her husband executed the bond, or bill single, which is the foundation of this suit, she was still a married woman. This was June 26th, 1868; and the bond recites that its consideration is "lumber and labor in building and repairs" on the residence. Neither the character of the materials and work furnished, nor the giving of the bond or bill single, constituted this claim a charge on her statutory separate estate.—*Ridley and Wife v. Hereford & Timberlake*, at the present term, and authorities cited.

It is contended for appellant that, because Mrs. Todd, after she became discovert by the death of her husband, used the improvements put upon her residence as a leverage in effecting a compromise with Cabaniss and the Northern Bank of Alabama, and because she employed the same claim as a purchasing fund in securing her residence, when sold under the decrees rendered in favor of those parties, she thereby fastened a charge on the property to repay to Mr. McCravey, for his services and materials she had thus utilized. Since the statutes were enacted, securing to married women their separate estates, numerous cases have come to this court, which have called for a definition of the methods by which such estate can be charged. Many of them are collected in *Lee v. Tannenbaum*, 62 Ala. 501. See, also, *Gans v.*

*Williams, Ib.* 41; *Conley v. Blue, Ib.* 77; *Hooks v. Brown, Ib.* 258; *Shulman v. Fitzpatrick, Ib.* 571. From the beginning, we have steadfastly held, that our statutes do not convert married women into *femmes sole*, or clothe them with powers other than those conferred by the statutes. They can enter into no contract for the payment of money, which will bind them personally; and their estates, so held, can be charged only to the extent, and in the mode prescribed by the statute. If, by death or otherwise, the statutory remedy given be rendered inapplicable, the power to charge fails with the remedy. The present alleged liability was utterly inoperative and void, when the services were rendered. We are unwilling to take a step, beyond any heretofore taken, and declare a trust on statutory separate estates, on a foundation which all our decisions declare void.— *Vance v. Wells,* 8 Ala. 399; *Fry v. Hamner,* 50 Ala. 52; 1 Addison on Contr., 3rd Amer. ed., § 13, and note 1. The complainant is entitled to no relief against the property known as the family residence.

When the bond, or bill single was executed, Mrs. Todd owned the store-house and lot, her equitable separate estate. That bond fastened a charge on that piece of property for its payment.— *Cowles v. Morgan,* 34 Ala. 535; 2 Brick. Dig. 86, § 211. It is urged for appellees, that the proceedings by the Northern Bank of Alabama, and sale thereunder, devested all the title Mrs. Todd acquired under the deed of her father, and left in her no equitable separate estate, upon which her bond could fasten an equitable charge. The argument is, that, by the decree in that cause, the deed under which she held was pronounced fraudulent and void as against the debts of Turner, her grantor, the property ordered to be sold, and sold, in payment of his debts, and that she became the purchaser, thus losing all right and property under the first deed, and holding only under the register's sale and conveyance.

If the chancery decree had been rendered in the ordinary way, in a suit conducted at arms' length, and she, being the highest bidder, had become the purchaser, we would not hesitate to declare her second title clear, and relieved of all trusts her bond had fastened upon it. Her title would then rest alone on her second deed, and she would own, and could claim, nothing under the first. But that is not the condition of this case. The whole controversy was compromised, and the property was sold, practically, under a consent decree— a decree, not to sell the property to the highest bidder, in payment, or part payment of the bank's claim of seventeen thousand dollars; but, a decree of sale, with a contemporaneous agreement that Mrs. Todd should become the purchaser,

paying no cash except the costs of the suit; and that, cost what the property might, she was then to assume to pay the bank three thousand dollars, and to execute a mortgage on the store-house and lot to secure its payment. This was to be in full satisfaction of the bank's claim on the property; and even the costs were paid out of rents of the store-house, realized during the litigation. This agreement was carried into effect, the property sold, and Mrs. Todd became the purchaser, paid no money except the costs, received a deed, and executed a mortgage on the property to secure the payment of the three thousand dollars. Whether that debt has been paid, the record does not inform us. There is nothing in the averments of the bill, relating to the suits and sale referred to, which can raise them to the dignity of judicial proceedings, so far as the interests of strangers can be affected thereby.—*Sims v. Lee*, at present term. The case stands as if no suits had ever been instituted by Cabaniss or the Northern Bank of Alabama, and Mrs. Todd had, by private arrangement, executed her note and mortgage on the property, in exoneration of its liability for the alleged debt of Turner. The effect of the arrangement was, that Mrs. Todd, by her mortgage, fastened a prior lien on the property for the amount of the debt thereby secured, and interest upon it. All the residue of the ownership in the store and lot—an equity of redemption—remained the equitable separate estate of Mrs. Todd, subject to the charge created by the bond; and the chancellor should have so decreed.

Reversed and remanded.

Brickell, C. J., not sitting.