# Thompson, *et al. v.* Hudgins, Exec.

## and

# Hudgins, Exec. *v.* Riser, *et al.*

*Bills in Equity to have cancelled and surrendered Notes and Mortgage.*

1.  *Gift of bank stock; creation of estate in remainder and reservation of life estate.*—Where, by a deed, the owner of bank stock gives, grants and conveys such stock to another, expressly reserving to himself an estate therein for and during his natural life, upon the delivery of the deed of gift, there becomes vested *in presenti* in the donee the title to said stock in remainder, dependent upon the precedent life estate therein; and the gift to the donee being absolute in remainder is irrevocable, and upon the death of the donor, the absolute title and interest in such stock vests in the donee.

2.  *Bank stock; profits and surplus; dividends; interest of life tenant and remainderman.*—The profits and surplus funds of a corporation, until separated from the capital stock by the declaration of a dividend, form part of the stock itself; and where bank stock has been conveyed by deed of gift, the donor reserving a life estate therein, as such life tenant the donor is entitled only to receive such dividends as may be declared upon the stock by the bank during his life, and the donee, as remainderman, is entitled to have and receive all dividends which should be declared after his death, whether derived from surplus funds actually earned by the bank before or after such event.

3.  *Gift; what necessary to constitute it.*—In order to constitute a

[Thompson, *et al.* v. Hudgins, Exec., &c.]

gift, there must be either on actual or symbolic delivery of the subject of the gift, with intent to give, or it must be evidenced by a deed conveying the subject of the gift upon a good consideration.

4. *Gift of bank stock; consideration; when not shown sufficient.* Where, two years after the execution of an absolute deed of gift to certain bank stock by the owner of such stock, wherein the donor expressly reserves a life estate therein, the donee enters into a contract, which, after reciting that the donor is entitled to have and receive during his life the income, dividends and earnings of said stock, and that the surplus fund set apart out of the net profits amount to a certain sum, that a proportionate part of the surplus fund of the bank as shall be earned by the stock conveyed belonged to the donor, or his personal representative after his death, and that in as much as equity and good conscience required the donee to pay to the personal representative of the donor, after his death, the full amount of such surplus fund as shall have been earned by said stock at the time of his death, then contains a promise and agreement on the part of the donee that he will pay to the donor's personal representative the full amount of such surplus fund as shall have been earned by said stock at the time of his death, such contract does not constitute a re-gift of the undivided surplus earned by the stock; the contract being void and unenforceable by reason of the fact that the agreement was wholly promissory and executory.

5. *Contract; when settlement of controversy not a sufficient consideration.*—The surrender of a mere assertion of a claim, when the claim is without legal merit, whether its legal validity is known or not, or the assumption of a supposed liability, which has no foundation in law or in fact, will not uphold a release or agreement of compromise, or a promise for the payment of money.

6. *Note and mortgage in settlement of a claim to the accumulated surplus of bank stock; when not supported by sufficient consideration; case at bar.*—The owner of bank stock, by a deed of gift, conveyed such stock to his grand-daughter, expressly reserving to himself a life estate therein. Two years later, the donee and her husband executed a written agreement, which was not supported by a sufficient consideration, in which they contracted with the donor, that after his death they would pay to his personal representative the full amount of the surplus fund as would have been earned by said stock at the time of his death. At the time of the donor's death, there was an accumulated surplus belonging to said stock, which was claimed by his executrix, and by the donee; the executrix insisting that the donee, by the contract previously entered into, was legally bound to pay her the surplus. To settle this dispute and controversy, the donee gave the executrix her notes for the amount claimed, and executed a mortgage on her lands to secure them. *Held*: That in as much as the life tenant's rights in the stock conveyed by the deed of gift only extended to such dividends as might be declared on the stock by the bank during his life, the donee, as remainderman, being entitled to

[Thompson, et al. v. Hudgins, Exec., &c.]

have and receive all dividends declared after his death, and to an interest in the undivided surplus earnings upon which no dividend was declared, there was no liability on the part of the donee to the executrix of the donor, and no reasonable grounds for the controversy in reference thereto, and, therefore, the notes and mortgage, which were given in settlement thereof, were without a valuable consideration and void.

7. *Same; same; same.*—In such a case, the agreement of the executrix of the donor to transfer the stock conveyed by the deed of gift to the donee on the books of the bank, does not constitute a consideration for the note and mortgage to the executrix; since the donee, being the absolute owner of the stock, was entitled to have its transfer entered on the books of the bank on the presentation of the certificates and the deed of gift, and, therefore, such an agreement on the part of the executrix imposed no obligation beyond what the law, without it, imposed as a duty.

8. *Same; same; same; forbearance on the part of the donor.*—By such an agreement between the donor and the donee of the bank stock, whereby the donee agreed to pay to the personal representative of the donor, after his death, the accumulated surplus which had been earned by such stock, it can not be contended that the donor was lulled into forbearance to coerce the bank to declare dividends during his life; since, notwithstanding such agreement the donor was free to act as he chose in compelling the bank to declare dividends, the donee having, by such agreement, acquired no right to such dividends as might be declared during his life, and there being no contract or agreement on the part of the donor to so forbear; a forbearance without an agreement to forbear not constituting a sufficient consideration.

9. *Contract in settlement of a controversy; mutual mistake of parties; pro tanto failure of consideration.*—Where, in effecting the settlement of a controversy, wherein a particular amount is claimed to be due and payable, the compromise is made in reliance upon the belief that said specified amount is due, and an express promise is made to pay such amount, and subsequently, in accordance with such contract, payments are made, upon its being afterwards ascertained that by a mutual mistake of facts on the parts of both promisor and promisee, a very much less sum was due than was agreed to be paid, the difference between the amount agreed upon and the sum actually due constitutes a *pro tanto* failure of consideration for the contract, and if the amount actually paid is equal to or in excess of the amount really due, such contract is entirely without consideration; and if the mistake is such that the promisor would, nevertheless, have entered into the contract, such contract will not be rescinded; but if it appears that the mistake was so material, though there was other valuable considerations, that the promisor would not have entered into the contract, he is entitled to the rescission thereof.

10. *Same; same; same; case at bar.*—The owner of bank stock conveyed it to his grand-daughter by deed of gift, reserving to himself a

life estate therein. Two years later the donee and her husband executed a written agreement, in which they contracted with the donor that after his death they would pay to his personal representative the full amount of the surplus fund that would have been earned by said stock at the time of his death. At the time of the donor's death, there was an accumulated surplus belonging to said stock which was claimed by his executrix and by the donee; the executrix insisting that the donee, by reason of the contract previously entered into, was legally bound to pay to her such surplus, representing that the interest of said stock in the surplus was a certain amount. To settle this dispute and controversy, and relying upon the statement of the executrix as to the proportionate interest of said stock in the surplus, the donee gave to the executrix her notes for such amount, and executed a mortgage on her lands to secure the same. Several of these notes were paid. It was afterwards ascertained that the interest of said stock in the surplus fund was, in fact, very much less than the amount which had been represented by the executrix, and that as a matter of fact the donee, in the payment of some of said notes, had paid largely more than said interest. *Held :* That there was a *pro tanto* failure of consideration for the notes and mortgage; and it appearing that there was no intention on the part of the parties thereto that the donee should obligate herself to pay more than the interest of her stock in the surplus profits, actually accumulated at the time of the falling in of the life estate, and such interest having been more than paid by the donee, there is, in the absence of other consideration, no longer any consideration for said notes and mortgage, and the donee would be entitled to their cancellation and surrender.

11. *Contract by married woman; if void when made; will not support a subsequent agreement.*—A contract by a married woman made at the time and under such conditions as under the law it imposed no personal liability or obligation upon her, and created no equitable or legal charge upon her estate, is void and will not support a subsequent promise, even though made at the time when the law gave her capacity to contract; and a contract made by a married woman, after the removal of her disabilities, which is founded upon a void contract previously made by her, and involves an agreement to carry out such void contract, is, itself, without consideration and unenforceable.

APPEAL from the City Court of Birmingham, in Equity.

Heard before the Hon. H. A. SHARPE.

These two cases are identical in all of their features, except as to the names of the complainants; Thomas C. Thompson and Julia N. Thompson being the complainants in one bill, and Adam O. Riser and his wife, Eula Riser, being the complainants in the other bill. The transactions in each were identical; and the facts of the two cases are set forth at length in the opinion.

The appeal in the case of *Thompson v. Hudgins* is from a decree sustaining the joint demurrers of the defendants to the complainants' bill; and the appeal in the *Riser Case* is from a decree overruling the motion to dismiss the bill for the want of equity and the demurrers interposed by the defendants to the complainants' bill. The rendition of each of these decrees is here separately assigned as error.

In the case of *Hudgins v. Riser*, there had been a decree previously rendered by this court sustaining the demurrers interposed by the defendants to the complainants' bill. An application for rehearing in this case was filed; and the result of the application for rehearing in that case was announced at the same time of the rendition of the opinion in the *Thompson Case*.

CABANISS & WEAKLEY, for appellants.—1. The profits and surplus fund of a corporation, until separated from the capital by the declaration of a dividend, are part of the stock itself, and belong, not to the life-tenant, but to the remainderman.—*Gibbons v. Mahon*, 136 U. S. 549; s. c. 34 Law. Ed., 527; *In re Kernochan*, 104 N. Y. 618; *Hyatt v. Allen*, 56 N. Y. 553; *Minot v. Paine*, 99 Mass. 101; *Rand v. Hubbell*, 115 Mass. 474; *Spooner v. Phillips*, 24 Atl. Rep. 524; 1 Mor. on Corp., § 465; 1 Cook on Stocks, 712, note; *Phelps v. F. & M. Bank*, 26 Conn. 269; *Underwood v. Wolfe*, 97 Ala. 375; *Smith v. Prattville Co.*, 29 Ala. 503.

2. The surrender of a mere assertion of claim, where the claim is without legal merit, will not uphold a release or agreement of compromise.—*Russell v. Wright*, 98 Ala. 652; *Ernst v. Hollis*, 86 Ala. 511; *Prince v. Prince*, 67 Ala. 565; *Prater v. Miller*, 25 Ala. 320; s. c. 60 Am. Dec. 521 and note; *Knotts v. Preble*, 99 Am. Dec. 514; *Branderstein v. Ebensberger*, 71 Texas 267; *Petterson v. Breitag*, 55 N. W. Rep. (Iowa) 86; *Shadburne v. Daly*, 18 Pac. Rep. (Cal.) 403; *Crippen v. Crippen*, 6 N. Y. Sup. 378.

3. Mere forbearance on the part of T. L. Hudgins to take action to have dividends declared, could constitute no sufficient consideration for the agreement made with him. It can not be presumed that he could have had dividends declared that were not declared in his lifetime. Besides, there was no agreement on his part

to forbear taking such action.    Forbearance, in the absence of an agreement to forbear, constitutes no sufficient consideration.—*Smith v. Bibber*, 19 Atl. Rep. (Maine) 89 ; *Shadburne v. Daly*, 18 Pac. Rep. (Cal.) 403 ; *Underwood v. Woolff, supra ; Smith v. Prattville Co., supra ;* Note in 60 Am. Dec., *supra,* p. 526.

4.   The original agreement made by Mrs. Thompson with Mr. Hudgins, having been made while she was a married woman, at a time when she had no capacity to execute any contract which would bind herself personally, to-wit, in 1886, and being therefore void, no subsequent promise on her part to carry out the agreement was valid and binding.—3 Am. & Eng. Enc. of Law, 841 ; 1 Smith's Leading Cases, (9th ed.), 286–7.

HEWITT, WALKER & PORTER, *contra.*—1.   The gift of the stock to Mrs. Thompson on the 26th day of August, 1884, was not completed or perfected.   It was not valid as a gift *inter vivos,* for such a gift goes into absolute and immediate effect, the donor parting not only with the possession, but with the dominion of the property. In this gift of Mr. Hudgins to Mrs. Thompson, he keeps possession, control and dominion of the stock, has the right to vote it and do all other things in the management and control of the bank that any other stockholder, owning the same amount of stock, could do.—*Craig v. Kittredge*, 46 N. H. 57 ; *Walker v. Walker*, 27 L. R. Ann. 799.   If this gift was not perfected, then limitations could be put upon it by the parties, which was done in the agreement made between them on the 26th day of June, 1886.

2.   The allegations of the bill show that there was a valuable consideration of said notes and mortgages.   T. L. Hudgins, Sr., as owner of said stock, having reserved to himself a life estate therein, after the deed of gift, could have had a dividend declared thereon during his life ; but desiring to leave this surplus to his estate, rather than take it out himself, he let it remain with the stock, upon the plaintiff entering into the agreement made by them in 1886.   Therefore, having lulled the donor into a sense of security, and promising him that they would allow his estate to have the surplus, they can not now, in a court of equity, claim that such surplus belongs to them, because it has never been declared

[Thompson, *et al.* v. Hudgins, Exec., &c.]

as dividends. Under the rulings of this court, such contract was supported by a sufficient consideration. *Rutledge v. Townsend*, 38 Ala. 706.

3. The settlement of compromise made between the executrix and the complainant, of the executrix's claim to the surplus belonging to the stock, constituted a sufficient consideration for the notes and mortgage. The fact that there was a withholding or forbearance on the part of the executrix to bring a suit to collect this surplus, constituted a valuable and a sufficient consideration.— *Churchill v. Bradley*, 58 Vt. 403; *Holcomb v. Stimpson*, 8 Vt. 141; *Bellows v. Sowles*, 55 Vt. 391; 3 Amer. & Eng. Encyc. of Law, pp. 837, 838, and note; *Ernst Bros. v. Hollis*, 86 Ala. 511; *Crans v. Hunter*, 28 N. Y. 389; *Hewitt v. Currier*, 63 Wis. 386; *Lipsmeier v. Vehslage*, 29 Fed. Rep. 175; *Grandin v. Grandin*, 9 Atl. Rep. 756; *Cen. Trust Co. v. W., St. L. & P. R. Co.*, 29 Fed. Rep. 546.

HEAD, J.—This is a bill by the appellants for the cancellation and surrender of three promissory notes and a mortgage given to secure the same, executed by them to appellee, Lucy P. Hudgins, executrix of T. L. Hudgins, deceased. The facts are that on the 26th day of August, 1884, the grandfather of the complainant, Julia N. Thompson, executed and delivered to the latter his deed, under seal, duly witnessed and acknowledged, by which in consideration of love and affection, he "gave, granted, bargained, sold and conveyed" to her two hundred shares of the capital stock of the First National Bank of Birmingham, an incorporated company, each of said shares being of the par value of one hundred dollars; but therein expressly reserved to himself an estate in said shares of stock, for and during his natural life. There were, in the deed, certain contingent limitations over of this stock, not material to any question raised by the record. On the 26th day of June, 1886, the said Thomas C. Thompson and his said wife, Julia N. and said T. L. Hudgins, entered into a written agreement, under their hands and seals, by which, in consideration of certain promises, hereafter to be specially noticed, it was stipulated that "the undersigned, Thomas C. Thompson and Julia N. Thompson, do now contract, promise and agree to and with the said Tarlton L. Hud-

gins, that, after his death, they will pay to his personal representatives the full amount of such surplus fund as shall have been earned, at the time of his death, by said two hundred shares of said capital stock ; and such surplus fund so earned, as aforesaid, shall be paid to said personal representative out of the five semi-annual dividends that shall, after the death of said Tarlton L. Hudgins, be first paid to said Thomas C. Thompson and Julia N. Thompson, on said two hundred shares of said capital stock ; one-fifth of such surplus fund, so earned, as aforesaid, to be paid out of each of such dividends ; and each of such payments shall be made by First National Bank of Birmingham, directly, to said personal representative ; and the receipt of said personal representative, to said bank, for such payments, shall discharge and exonerate said bank, for the amount of such dividends, so paid to said personal representative.'' On the 24th day of December, 1888, the said Thos .C. Thompson and wife executed to said Lucy P. Hudgins, as executrix of said T. L. Hudgins—the latter having died in June preceding—a mortgage on lands, to secure the promissory notes therein described, as will be presently shown, reciting the said deed of gift of the shares of stock, aforesaid, and the said subsequent agreement of June 26th, 1886 ; and reciting, further, as follows : ''and, whereas, the said T. L. Hudgins departed this life on or about the 28th day of June, 1888, and at the time of his death the said 'surplus fund' that had been theretofore set apart from time to time out of the net profits and earnings of said bank amounted to the sum of one hundred and twenty-five thousand dollars ; and, whereas, of said 'surplus fund' of said bank, so earned and set apart as aforesaid, the said two hundred shares of said capital stock, at the time of the death of said T. L. Hudgins, had earned the sum of ten thousand dollars ; and, whereas, on the 30th day of June, 1888, and after the death of said T. L. Hudgins, the said bank declared a dividend of six per cent on its capital stock, payable to its stockholders on and after the first day of July, 1888 · and, whereas, the undersigned, Thomas C. Thompson and Julia N. Thompson, claim that the said Julia N. Thompson is entitled to such dividend, but Lucy P. Hudgins, the executrix of the last will and testament of said T. L. Hudgins, deceased, claims that she as such

executrix is entitled to such dividend ; and, whereas, the undersigned, Thomas C. Thompson and Julia N. Thompson, claim that there is no legal or equitable obligation resting upon them to pay to said executrix the said sum of ten thousand dollars, the amount of the said 'surplus fund,' earned as aforesaid by the said two hundred shares of stock of said bank during the lifetime of the said Hudgins, but the said Lucy P. Hudgins as executrix, as aforesaid, claims that the said Thomas C. Thompson and Julia N. Thompson are both bound, legally and equitably, to pay to her as such executrix the said sum of ten thousand dollars ; and, whereas, in full settlement and compromise of said matters in controversy and dispute between the said Thomas C. Thompson and Julia N. Thompson and the said Lucy P. Hudgins as such executrix, the said Thomas C. Thompson and Julia N. Thompson do now hereby surrender to Lucy P. Hudgins, as such executrix, all claim they may or can have to said dividend, and in further consideration of such final settlement and compromise the said Thomas C. Thompson and Julia N. Thompson have executed their eight joint promissory notes, payable to the order of the said Lucy P. Hudgins as such executrix, all of even date herewith, each for the sum of eleven hundred dollars, and due and payable as follows, to-wit : One on the 20th day of January, 1889, one on the 20th day July, 1889, one on the 20th day of January, 1890, one on the 20th day of January, 1891, one on the 20th day of July, 1891 ; one on the 20th day of January, 1892, one on the 20th day of July, 1892 ; and the said Thomas C. Thompson and Julia N. Thompson have agreed to execute a mortgage upon the real estate hereinafter described to secure the promissory notes, and the said Lucy P. Hudgins, as such executrix, has agreed to transfer upon the books of said bank the said two hundred shares of said stock to said Julia N. Thompson. Now, therefore," &c., proceeding to a conveyance of the land to secure said notes, with power of sale, &c. On the 20th day of March, 1892, the said Thompson and wife executed another mortgage, on the same lands, to said Lucy P., as such executrix, reciting the previous mortgage, and that six of the said eight promissory notes still remained unpaid ; the first five of which were past due ; and reciting further, as follows : "and, where-

[Thompson, *et al.* v. Hudgins, Exec., &c.]

as, the said Lucy P. Hudgins, executrix, as aforesaid, has agreed with the said Thomas C. Thompson and Julia N. Thompson to extend the time for the payment of said indebtedness, now past due, including the interest accrued thereon, to the date of this mortgage, as hereinafter set out, said indebtedness to be evidenced by five promissory notes, each for the sum of $1,188.00, each bearing date January 20th, 1892, each bearing interest from the date thereof and payable to the grantee herein, respectively, 12, 18, 24, 30 and 36 months from the date thereof, at the First National Bank of Birmingham, Ala., the consideration for each of said notes being the same consideration as is recited in the mortgage hereinabove referred to as securing the eight original promissory notes, and in addition thereto the agreement of the grantee herein to extend the time for the payment of said past due indebtedness as hereinabove recited and the accrued interest on each of said five original promissory notes to the date of this mortgage; and, whereas, the eighth original promissory note, made and executed by said Thomas C. Thompson and Julia N. Thompson, bearing date December 24th, 1888, for the sum of eleven hundred dollars, due and payable on the 20th day of July, 1892, to the order of Lucy P. Hudgins, as executrix, as aforesaid, at the First National Bank of Birmingham, Ala., is not yet due, said note having been given by the said Thomas C. Thompson and Julia N. Thompson for the consideration recited in said mortgage, given to secure the same, and hereinabove referred to. Now, therefore," &c., proceeding to a conveyance of the land to secure the five notes, with power of sale, &c.

Briefly stated, the bill avers, substantially, that said agreement of June 26th, 1886, was entered into by complainants upon the representation of said T. L. Hudgins to them that the facts and conclusions therein recited, and which will hereafter be stated, were true; and that relying upon the said representation, and being in ignorance of their rights, in the premises, they entered into the agreement; and they aver that there was no consideration whatever for said agreement; that the recited consideration of $5 was nominal and never paid; and they further aver that the agreement was void, also, for that the said Julia N. was at the time a married woman. It is further averred, that immediate-

[Thompson, *et al.* v. Hudgins, Exec., &c.]

ly after the death of said T. L. Hudgins, the said Julia N. Thompson succeeded to the use and possession of said shares of stock, and is now, and has been ever since that time, in the possession thereof; that after that time, being desirous of carrying out the wishes of the said T. L. Hudgins, with respect to such portion of the surplus of the capital stock of the bank, as had been earned by the said 200 shares, up to his death, and supposing that there was an actual surplus of $125,000, and that said 200 shares had earned $10,000, which had been passed to the surplus fund, complainants executed the said notes and mortgage of December 24th, 1888; and also surrendered to the said Lucy P., as executrix, all claim that they might have to the dividend of six per cent., which had been declared, shortly after the death of said T. L. Hudgins; and they aver that there was no consideration whatever for the said notes and mortgage, that the said second notes and mortgage were founded upon no other consideration than those previously given. The complainants voluntarily paid one of the notes for $1,100, and two of those for $1,188, each—the others remaining unpaid. The last mortgage, which was duly recorded, is outstanding and unsatisfied, and is averred to be a cloud on the title of said Julia N. to the land embraced therein—the land being her property.

The complainants further aver, that although they supposed, when the first notes and mortgage were given, that the bank had really earned an accumulated surplus of $125,000, yet, in fact, as they have since learned, the bank really had no surplus, and its capital stock was actually worth not more than the par value thereof. They aver, on information and belief, that the said supposed surplus of $125,000, really consisted of worthless securities; and that all the assets of the bank, on December 24th, 1888, were not worth more than enough to discharge its liabilities and pay off its capital stock; that the books show that at the time of filing the bill, the bank had a surplus of about, and not exceeding, $30,000; and they aver that they have already paid the executrix greatly more than the proportionate share of the real surplus to which said Julia N. was entitled on the 24th of December, 1888, by virtue of being the owner of said 200 shares,

The respondents interposed the following grounds of demurrer to the bill:

"1. The complainants seek to have three certain promissory notes and a certain mortgage, which are referred to and described in the prayer of said bill, and which were executed by complainants, delivered and surrendered up to the complainants and satisfied and cancelled upon the ground that there was no consideration for the same, when the bill shows that T. L. Hudgins, Sr., gave the stock referred to in said bill to complainant, Julia N. Thompson, and that before the death of said T. L. Hudgins, Sr., complainants gave the surplus, referred to in said bill, back to said T. L. Hudgins, Sr., and said notes and mortgage are evidences of what complainants owe for said surplus.

"2. That said bill shows that the said gift of said stock by said T. L. Hudgins, Sr., to said Julia N. Thompson was not completed and was not to take effect until after the death of said T. L. Hudgins, Sr., and said bill further shows that complainants took said stock with the condition which complainants attached to and put upon the same by the execution by them before the death of said T. L. Hudgins, Sr., of a certain paper writing, a copy of which is attached as Exhibit B to said bill, which condition required complainants to pay to the estate of said T. L. Hudgins, Sr., the amounts for which said promissory notes and said mortgage are given.

"3. The bill shows that there was a valuable consideration for said notes and mortgage, and that complainants, recognizing such to be the case, executed the same.

"4. The bill shows that after the death of said T. L. Hudgins, Sr., complainants took said stock with full knowledge of all the circumstances surrounding the same, and all the conditions attached to the same, and by the execution of said Exhibits "B," "C," and "D," attached to said bill, settled in full all the matters set up and complained of in and by said bill.

"5. The bill shows that complainants executed said notes and mortgage for the valuable consideration that they would not be sued by the personal representative of said T. L. Hudgins, Sr.

"6. The bill shows that there was ample consideration for said notes and mortgage in that morality demanded that complainants should execute the same."

The court sustained the demurrers, and that ruling is assigned as error.

Considering the propositions of these demurrers, chronologically, without regard to the order of their statement, we remark, first, that it seems scarcely necessary to affirm, that the deed of gift, of August 26th, 1884, vested, *in presenti*, in Mrs. Thompson, either the legal or beneficial title to the shares of stock, in remainder, dependent upon the precedent life estate therein reserved to the donor. The gift to her, in remainder was absolute, without contingency, and forever irrevocable; and the stock vested in her, in possession, immediately upon the death of the donor, as it had vested, in estate, immediately upon the execution of the deed.

The demurrer and argument, in effect, concede the proposition, (about which there could really be no dispute), that, as life tenant, the donor was entitled (aside from his rights as a shareholder in corporate meetings) only to have and receive such dividends as might be declared upon the stock by the bank, during his life—the donee, as remainderman, being entitled to have and receive all dividends which should be declared after his death, whether derived from surplus funds actually earned by the bank before or after that event. The authorities are well nigh all one way, on this subject, and it is unnecessary to cite them here. Many of them are collated in the brief of appellants' counsel; and besides, as we have said, the principle is not disputed by the respondents. The demurrers concede. it, and rely in avoidance, in part, upon a *re-gift* by the donee to the donor of the undivided surplus earnings, accumulated during the life of the latter, claimed to have arisen out of the subsequent writings entered into by and between the parties. Thus it is, that on the 26th day of June, 1886, when the agreement of that date was entered into, the said donor—the life tenant—had no right, title or interest in the earnings of the bank, except such as might be divided and set apart as dividends, during his life, upon the shares held by him. But, as we have seen, the demurrer proposes, and it is so contended in argument, that that agreement operated as a gift back by the donee in remainder, to the donor and life tenant of the undivided surplus accumulated, and to be accu-

mulated, during the latter's life. We have hereinabove set out the contract clause of that agreement, and a mere glance at it entirely refutes this proposition. The agreement is wholly promissory—completely executory—bearing no semblance whatever of an executed gift. A gift is accomplished in one of two ways : By actual or symbolic delivery of the subject of the gift, with intent to give, or by deed delivered conveying the subject of the gift, upon a good, as distinguished from a valuable, consideration. A promise to make a gift, is not a gift. It is void—not enforceable. Such also are the nature and effect of the subsequent promissory notes and mortgages given by the complainants. They, too, are merely executory, and if founded upon no other than a good consideration, are not enforceable. Hence, there was no *re-gift* of the undivided surplus.

Now, then, what is conceived to be the valuable consideration which must support the notes and mortgage sought to be cancelled? It is said there was a doubtful controversy and dispute between the parties, and that the first notes and mortgage were executed in compromise and settlement of the matters in dispute, which compromise formed a valuable consideration ; and that these and an extension of the indebtedness, were the consideration of the notes and mortgage in question. Before adverting to the facts which enter into this contention, let us notice the general principles of law which control considerations of this kind.

In *Prater v. Miller*, 25 Ala. 320, an heir at law of the deceased, Prater, employed counsel to contest the probate of her father's will, which had been propounded for probate, and the devisees promised, in consideration that she would withdraw all opposition and allow the will to be admitted to probate, to pay her a certain sum ; but it was not shown that there was any ground for contesting the will, or any doubt as to its validity. Chief Justice CHILTON said : "Is this, without more, a sufficient consideration? If no doubt existed as to the validity of the will, it was her legal duty not to have interposed. It could not be tolerated that any one should enforce a promise to pay money, the sole consideration of which was an exemption from a threatened suit, for which there was not the least foundation. As well might a party be allowed to recover upon a contract to

[Thompson, *et al.* v. Hudgins, Exec., &c.]

pay so much money in consideration that the plaintiff
would not slander the defendant, as that he would not
make a false clamor in court against him.   To make
such consideration valid, there must be some *legal right*
abandoned or postponed, or some obligation imposed by
the contract, beyond what the law, without it, enjoins
as a duty.   Mrs. Miller could have made a contest, but
would it have availed her anything?   If she had even
proved successful, it is not shown that she would have
been benefitted.   The proof entirely fails to show that
she has suffered any detriment or inconvenience, or that
the defendants below have in any wise been benefitted."
The judge quotes several English cases in point, and
proceeds : ''In *Edwards v. Baugh*, 11 Mees. & W. 641,
the declaration stated, that disputes and controversies
were depending between the plaintiff and defendant, as
to whether or not the defendant was indebted to the
plaintiff in, to-wit, the sum of 173 lbs. 2s. 3d., for money
lent to and paid for the defendant by the plaintiff ; and
thereupon, in consideration that the plaintiff would then
promise the defendant not to sue him at any time for
the recovery of said sum so in dispute between them,
and would accept from the defendant the sum of 100 lbs.
in full satisfaction and discharge of the same, the de-
fendant promised the plaintiff to pay him the sum of
100 lbs. in a reasonable time.   *It was held*, that the de-
claration was bad, as not showing a sufficient considera-
tion for the promise, there being no allegation that any
debt was due, but merely that a dispute and contro-
versy existed respecting it.   It was contended in that
case, for the plaintiff, that the relinquishment by him
of a right, and a corresponding benefit to the defendant
of being saved costs, &c., incident to making defence,
&c., was a sufficient consideration ; and that the parties,
by their agreement, had constituted themselves the
judges as to whether anything was due or not, and had
admitted thereby the legality of a claim for some amount.
But the court held otherwise.   'Lord ABINGER, C. B.—
The declaration only alleges that certain disputes and
controversies were pending between the parties, whether
the defendant was indebted to the plaintiff a certain sum
of money.   There is nothing in the use of the word
''controversy'' to render this a good allegation of con-
sideration.'   He conceded that the declaration would

have been good, if it had averred that the defendant was indebted to the plaintiff in diverse sums of money lent, &c., and a dispute arising as to the amount due, the defendant promised to pay so much in satisfaction, &c. In that case, he said, the plaintiff would have been bound to have proved at the trial the existence of a debt to some amount: he might not be bound to prove that the whole amount was due, 'but simply to show such a claim as to lay a reasonable ground for the defendant's making the promise;' whereas, he said, 'in the present case, he would not have to prove anything beyond the fact that there had been a dispute between himself and the defendant as to the existence of a debt. A man may threaten to bring an action against any man he meets in the street.' ROLFE, B., said he was of the same opinion, and that the counsel for the plaintiff had laid down the doctrine much too broadly—that if a party forbears to do something which he might have done, that forbearance would be a good consideration for a promise; so that, if it had appeared on the face of the declaration that nothing had been due the plaintiff, his forbearance to sue would even then be a good consideration. 'I can not,' he said, 'subscribe to that. I think the plaintiff is bound to show a consideration, in the shape of something either beneficial to the opposite party, or detrimental to himself.' See, also, 2 Binn. Rep. 509; 5 Serg. & R. 519; Parsons on Contr., 365–367; Story on Contr., § 436; *Holt v. Robinson*, 21 Ala. 111; Addison on Contr., 32–33; Chitty on Contr., 43–44.

" In this case the proof wholly fails to show that any ground of contest existed; and without this, or without some proof showing a reasonable ground of dispute, the plaintiff below had no cause of action, has sustained no injury or inconvenience, and cannot therefore recover."

That case was followed in *Stewart v. Bradford*, 26 Ala. 410, and the following charge held properly refused: "That if the jury believe there was a controversy between plaintiff and defendant as to whether plaintiff had defrauded defendant, in the sale of the negro, and that plaintiff, in settlement of the controversy, agreed to knock off one hundred dollars on the note sued on, then defendant would be entitled to a deduction for that sum." Judge RICE, by emphasizing the word, *"verbal,"* seemed to restrict the principle to verbal agreements; evidently

having in mind the common law rule that the consideration of sealed agreements could not be inquired into in a court of law. But even that rule has been changed by statute, now found in section 2667 of the Code of 1886, (Code of 1896, § 3288). He restricts the rule, also, to cases where there was no pending suit between the parties, which was settled by the contract sought to be enforced.

In *Maull v. Vaughn,* 45 Ala. 134, a man had died insolvent, leaving a widow and an infant child, and one horse which was used by the widow as a plow and saddle horse, without letters of administration; and an agent of a judgment creditor of the husband obtained from the widow her promissory note, with surety, in settlement of said judgment, telling her that she was liable to pay the judgment because she had so used the horse, and thereupon, without her request, he receipted the judgment on the docket. The court, by PECK, C. J., said the widow was entitled to keep and use the horse until administration granted, and was not liable to pay the judgment, and the note she gave was without consideration, both as to her and her surety. He said "the assumption of a supposed liability, which has no foundation in law or fact, is not a sufficient consideration for a promise, upon which an action can be maintained."

In *Prince v. Prince,* 67 Ala. 565, the court, after laying down the rule that the law greatly favors the compromise of doubtful rights or demands, and that such a compromise when made *bona fide* is a sufficient legal consideration for a contract or promise, even though it subsequently appears that the demand or claim was unfounded; and that such is the case whether a suit is pending or not, declared: " But, when a claim is absolutely and clearly unsustainable, at law or equity, its compromise constitutes no sufficient legal consideration ;" citing 1 Addison on Contr., § 14, note 1; *Sav'g Bank v. Colcord,* 15 N. H. 119. The question was upon the validity of an alleged compromise agreement and conveyance in writing, made by Prince and his wife to A. C. Hargrove and H. C. Vaughn, conveying to them her lands, on a compromise of a claim they held as administrators of E. B. Vaughn, against Prince, the husband. There had been a previous deed of trust to the lands, ex-

ecuted by the husband. The compromise conveyance recited, that the parties of the first part had taken legal steps to have the land sold under the deed of trust; that there were some doubts as to the validity of the conveyance, and protracted litigation was threatened; therefore, to prevent litigation, and to settle the matters in dispute, the parties aforesaid do covenant and agree, as follows, &c., expressing the conveyance of the land. The administrators afterwards sold the land, so conveyed, to J. S. Ryall. It was contended, that at the time this compromise was effected, the court had not announced its conclusion holding such mortgages of married women's property to be void; and that it presented a grave matter of doubt among members of the legal profession; but this court said: "The *facts*, however, were undisputed, and the only doubt was as to the law. The statutes on this subject were then as fully promulgated as now. Every one was required to know their proper construction, and neither ignorance nor doubt was any excuse." The contract was held invalid for the want of a legal consideration.

In *Ernst v. Hollis*, 86 Ala. 511, the same principle was applied. STONE, C. J., said: "The surrender of a mere assertion of claim, or the withdrawal of a threat to sue, when the claim is without legal merit, whether its legal invalidity is known or not, will not uphold a release or agreement of compromise," citing cases *supra*, and cases from other courts.

In *Russell v. Wright*, 98 Ala. 553, Justice HARALSON reviewed all these cases, and held to the same doctrine. *Christian v. Niagra Ins. Co.*, 101 Ala. 634, opinion by COLEMAN, J., is to the same effect.

Keeping in mind the principle thus so clearly established in this court, let us carefully examine, each and every, the premises upon which the parties stood, and which are advanced by the respondents, as the sole support of the supposed obligation of Mrs. Thompson. We will find, that the unquestionably true analysis of these promises shows that there was an absolute and total absence of any disagreement, whatever, between the parties as to any fact or facts, in the slightest degree or remotest conception, material or relevant to their acts or conduct; and further, that the complainants conceded to be true, in its fullest import, every fact asserted for

their action, and unreservedly yielded and surrendered to the extremest verge of every demand asserted, claimed or made against them. If respondents had sued the complainants for everything which had entered into their minds to conceive they were entitled to, the claim could not possibly have been made broader than that to which the complainants surrendered. Not only this, although indisputably incorrect assertions of legal principles are recited, the very form, nature, contents and effect of the writings, construed by their four corners, show unmistakable recognition by all the contracting parties that, as matter of law, neither the life tenant nor his personal representative was entitled to the undivided surplus accruing during his life; but that the remainder-man was entitled to the same, when subsequently divided by the bank; that she alone was authorized to receive them, and that the bank had no authority to pay them to any other than herself. Adverting now to the premises, the agreement of June 26th, 1886, recites the substance of the deed of gift of 1884, and proceeds thus : "And, whereas, the said Tarlton L. Hudgins is entitled to have and receive during his lifetime the income, dividends and earnings of said two hundred shares of stock." This recital, properly interpreted, would seem to mean that he was entitled to have and receive such earnings, &c., as should be divided and allotted to his shares during his life. So interpreted, it correctly states the law; otherwise, it is a mere misstatement of the law. "And, whereas, the 'surplus fund' that has been heretofore set apart, from time to time, out of the net profits of said First National Bank of Birmingham, now amounts to the sum of twelve thousand, five hundred ($12,500) dollars." That fact was not disputed, at all, by the complainants. "And, whereas, the capital stock of said First National Bank being two hundred and fifty thousand dollars, the said two hundred shares of said capital stock has earned one thousand dollars of said twelve thousand, five hundred dollars of surplus fund, heretofore set apart, as aforesaid. And whereas, the surplus fund of said First National Bank will be increased from time to time by the setting apart of certain portions of the net profits of said bank." There was not the least dispute of these facts. "And, whereas, the said sum of one thousand dollars of said surplus fund heretofore set

apart, as aforesaid, and such part of the surplus fund of said bank hereafter to be set apart during the lifetime of the said Tarlton L. Hudgins as shall be earned by the said two hundred shares of the capital stock of said bank, constitute and form a part of the income and earnings of said two hundred shares of said stock, which the said Tarlton L. Hudgins, in his lifetime, or his personal representative after his death, is entitled to have and receive." This is a mere misstatement of a legal conclusion. "And, whereas" (mark this recital) "such part of said surplus fund as shall have been earned, at the time of the death of the said Tarlton L. Hudgins, by the said two hundred shares of said capital stock, will remain and constitute a part of the assets of said bank, after the death of said Tarlton L. Hudgins, and said two hundred shares of said capital stock will thereby be increased and enhanced in value." Here is a terse, clear statement of the law, as it was and is ; directly repugnant to the preceding erroneous conclusions, and those that follow. By reason of the fact and conclusion here declared, that the stock will thereby be rendered more valuable to Mrs. Thompson, the writing, gravely, (we cannot say seriously) proceeds to recite : "And, whereas, equity and good conscience require that the undersigned Thomas C. Thompson and Julia N. Thompson *should pay* to the personal representative of said Tarlton L. Hudgins, after his death, the full amount of such surplus fund as shall have been earned, at the time of the death of said Tarlton L. Hudgins, by the said two hundred shares of the capital stock ; and, whereas, a court of equity would direct and require the undersigned, Thomas C. Thompson and Julia N. Thompson" (both husband and wife) "to pay to the personal representative of Tarlton L. Hudgins, after his death, the full amount of such surplus fund as shall have been earned at the time of the death of said Tarlton L. Hudgins, by the said two hundred shares of said capital stock." Then follows the contractual clause, which we have already copied, by which the complainants contracted, promised and agreed to pay, as it was recited they ought to pay. And, in order to change the payment of dividends by the bank, from the direction which the parties knew the law would give them, care was taken to provide that the payment of dividends by the bank should be made di-

rectly to the personal representative, whose receipt therefor should discharge and exonerate the bank for the amount so paid. It is clear as the light of day that this whole transaction was conceived in the knowledge of Mr. Hudgins, or his adviser, that by law he had no right whatever to the undivided surplus on hand at his death ; and the effort was to secure such a right by contract. If his executrix was, by law, entitled to the surplus, what had Mrs. Thompson to do with it? How could she collect it, when divided, from the bank? Why the necessity to create a power of attorney in Mrs. Hudgins to collect the dividends, and why provide for the protection and exoneration of the bank in making the payments to her? Why should Mrs. Thompson and her husband promise and bind themselves to pay it? Why would a court of equity, as the agreement recites it would, compel them to pay it, when they did not and could not receive the dividends? What better remedy would the executrix desire than her right of action against the bank for the dividends when declared, if by the law they belonged to her? And if, by law, they belonged to Mrs. Thompson, as remainderman, what had the executrix to do with them? Why should Mrs. Thompson bind herself to account to the latter for them? These inquiries in view of the undisputed facts, serve to demonstrate how absolutely futile and unfounded was the assertion of this claim, in behalf of the respondents ; and, as we said before, the very form and nature of the agreement demonstrate that the parties knew, at the time, that the claim had no foundation, in law.

We have already set out the recitals of the two mortgages. They introduce nothing new, except that when the first one was given, on December 24, 1888, it was recited that Mr. Hudgins died on June 28, 1888, and that, at the time of his death, the surplus had increased to $125,000, whereby the 200 shares had earned $10,000 ; that a dividend of 6 per cent, amounting to $1,200, had since been declared, which was, by the instrument, surrendered to the executrix ; and for the balance of the accumulated surplus, earned by said shares, to-wit, $8,800, complainants gave their notes, secured by the mortgage. The mortgage recites, as we have seen, that complainants claimed that said Julia N. was entitled to

8

said dividend, and the executrix claimed that *she* was entitled to it; and, further, that complainants claimed that there was no legal or equitable obligation resting upon them to pay the executrix said $10,000, but the executrix claimed that they were, both of them, legally and equitably bound to pay the same; wherefore, as a *compromise*, the complainants surrendered to the executrix all claim to the six per cent. dividend, and gave their notes and mortgage for the entire balance of the $10,000 claimed. Thus, we see, they not only gave up, on a most fictitious and unfounded demand, every dollar which was claimed against them, but, if the contract were binding, they actually became guarantors of the future success of the bank, and its ability to maintain the surplus until some indefinite time, in the future, when it might, in its discretion, see fit to divide the same among the shareholders. Although the accumulated surplus might, the next day, have been swept away by the casualties of business; nay, although the bank might have gone to failure and insolvency, and its stock become worthless, without the receipt of, or possibility to receive, a dollar by the complainants, in dividends or otherwise; yet, the inexorable demand of the contract into which they entered, would require them to pay the entire, then existing, surplus of $8,800. We think it is not possible to conceive a case more completely within the influence of the salutary principles of law announced by this court, to which we have adverted. Those principles were evolved from the wisdom of the past, for just such cases as this.

The last mortgage is based alone upon the first, and is infected with the same vice.

There is clearly no merit in the contention that the agreement of Mrs. Hudgins, as executrix, to transfer the stock to Mrs. Thompson on the books of the bank, constituted a consideration for the mortgage, &c. If such a transfer by her was required by the by-laws of the bank, it was a duty enjoined by law upon the executrix to make it without compensation.— *Webster v. Upton*, 91 U. S. 65. As said by Judge CHILTON in *Prater v. Miller, supra*, "To make such consideration valid there must be some legal right abandoned or postponed, or some obligation imposed by the contract beyond what the law, without it, enjoins as a duty." Mrs. Thompson

being the absolute owner of the stock by virtue of the conveyance to her by her grand-father, she had a plain right and remedy to have its transfer to her entered upon the books. That she was such owner, see *Duke v. Cahaba Nav. Co.*, 10 Ala. 82; *Johnson v. Laflin*, 103 U. S. 800; 2 Brick. Dig. 43, §§ 50 *et seq.* The bill shows the stock went into her possession on the death of the life tenant. If the executrix had detained the certificates from her, she would have been entitled, at least in a court of equity, to recover them; and to have compelled the officers of the bank to enter the proper transfers on the books. The execution of the deed, by Mr. Hudgins, vesting at least the complete beneficial ownership, carried with it authority and duty to the bank to make the proper transfer on the books, upon presentation of the certificates and deed; and to the performance of this duty the bank could have been compelled.—*Duke v. C. N. Co.*, *supra*, (44 Am. Dec. 472); *Bank of Utica v. Smalley*, 2 Cowen, 770, (14 Am. Dec. 526 and note); *Sargent v. Ins. Co.*, 8 Pick. 90; *Dickinson v. National Bank*, 129 Mass. 279, (37 Am. Rep. 351 and extended note); *Commercial Bank v. Kortright*, 22 Wend. 348, (34 Am. Dec. 317 and note); *State Bank v. Cox & Co.*, 11 Rich. Eq. (S. C.) 344, (78 Am. Dec. 458); *Farmers & M. Bank v. Wasson*, 48 Iowa, 336, (30 Am. Rep. 398); *Cushman v. Thayer Mfg Co.*, 76 N. Y. 365, (32 Am. Rep. 315); *Iron Railroad Co. v. Fink*, 41 Ohio St. 321, (52 Am. Rep. 84); *Kimball v. Union Water Co.*, 13 Am. Rep. 157; *Morgan v. Bank of N. A.*, 11 Am. Dec. 575; *Bond v. Mt. Hope Iron Co.*, 97 Am. Dec. 49; *Baltimore R'y Co. v. Sewell*, 6 Am. Rep. 402; *P. & M. Mut. Ins. Co. v. Selma Savings Bank*, 63 Ala. 585. The case of *Cushman v. Thayer Mfg. Co.*, *supra*, was one of a gift of stock, and is the same, in principle, as the present case, on the point under discussion.

Moreover, while the National Banking act authorized the bank to prescribe, by by-laws, the method of transfer of its stock, there is nothing in this record to show that the power had been exercised. We know nothing of any rule on the subject, prescribed by this bank.

We hardly think it necessary to discuss the proposition of counsel for respondents, that Mr. Hudgins was, by reason of the agreement of 1886, lulled into forbearance to coerce the bank to declare dividends during his

life. There was no agreement on his part to so forbear, nor is there a semblance of a showing before us, that the bank had conducted itself so unfaithfully, in that regard, that he had any right or power so to coerce it. Taking the averments of the bill to be true, there was practically nothing to divide. It is manifest the agreement of 1886, contemplated that the promise of complainants to pay was based upon the sum which should be found to have accumulated in the bank from net earnings, at the time of the death of Hudgins. Mrs. Thompson acquired no interest, either by the deed to her or that agreement, in any dividends which might have been declared during his life. Would it be contended that she could have collected such dividends? Obviously, Mr. Hudgins felt that his remaining years of life would be few ; and, probably knowing the condition or policy of the bank, believed no dividends would be declared during his life, and, hence, was prompted to procure the agreement. He never thought of denying himself such dividends, if any should be declared. This idea of forbearance seems not to have been in the minds of the parties when the mortgage was drawn, as it was not alluded to in that instrument. On the contrary, it recites that the executrix claimed that the whole accumulated surplus *belonged* to *her*—not that it belonged to Mrs. Thompson, who owed her for it. Mr. Hudgins was free to act as he chose in reference to compelling the bank to declare dividends.

But, the demurrers are bad in two other aspects of the case. We are now in a court of equity. We are concerned with the equitable principles which govern the rights of the parties, in respect of the mortgage in question. The bill is, in a sense, to restrain the enforcement of the mortgage. The same rules of equity are justly applicable, as would apply if the mortgagee were proceeding to foreclose. That would be in the nature of specific performance—a remedy resting in that sound discretion of the court, which will see to it that manifest injustice and oppression shall not be accomplished by its enforcement. The present bill, taken most strongly against the pleader, shows that the recital in the contract, which was the main inducement to the contract, that there was, at the death of Mr. Hudgins, an accumulated surplus in the bank of $125,000, was

founded in mutual mistake of the parties. That the promise was made in reliance upon this belief, and the promise was expressly to pay the amount earned by the 200 shares out of a surplus recited to be actually existing, for that amount; whereas, the bill taken most strongly against complainants as to when the same accrued, shows that, in point of fact, as was afterwards ascertained, the surplus did not actually exceed $30,000; so that the interest of the 200 shares therein, instead of being $10,000, as computed in the contract, could not exceed $2,400; and complainants have already paid on account of said contract, largely more the sum of $2,400. We think it cannot admit of doubt, upon the writings themselves, that there was no intention on the part of the complainants or the executrix, that the complainants should obligate themselves to pay more than the interest of the 200 shares in the surplus profits actually accumulated, at the time the life estate fell in. Such was the agreement, in express terms, made with Mr. Hudgins in 1886, and which was embodied in the mortgage. The mortgage was so written as to represent, that such surplus amounted to $125,000. The complainants aver that they believed the representation to be true, and acted on it. The executrix cannot be heard to say she knew it to be untrue, and knew the surplus was only $30,000, for presumably, the mortgage was prepared and tendered by or for her; and for her so to affirm would be to confess to a fraudulent misrepresentation of a most material fact, or, at least, to a fraudulent concealment of a material fact, against which, of itself, a court of equity would grant relief. Here, then, by a mutual mistake of fact, on the parts of both promisors and promisee, the former were led to obligate themselves to give up and pay $10,000, when, according to the real intent and purpose of both, the sum should have been only $2,400; one-half of which was paid off by the 6 per cent. dividend. The executrix has not altered her position by reason of the mistake. She is yet the holder of the obligations, and can suffer no possible injury from a correction of the mistake, in the enforcement of justice and honesty. Can it, therefore, be doubted that equity will declare this *pro tanto* want or failure of consideration? We think clearly not. In *Colton v. Stanford*, 82 Cal. 351 (16 Am. St. Rep. 137),

we find a lengthy discussion of this and kindred questions, and that the rule deducible therefrom is, that if the mistake is such that the party would, nevertheless, have entered into the contract, relief will not be afforded; but if it appears that the mistake was so material, though there were other valuable considerations, that the party would not have entered into the contract, the latter will be rescinded. There is no question of offer to do equity. The complainants have paid largely more than the amount they ought to have paid, and the demurrer does not raise the question.

Again, the agreement of 1886 was void by reason of the coverture of Mrs. Thompson. The married woman's law was changed in 1887, so as to authorize a wife to contract, in writing, with the written assent of the husband; and she and the husband can mortgage her lands to secure her contracts, so entered into; but, of course, the contract, to be binding, must be supported by a valuable consideration. The agreement of 1886, is embodied in, and constitutes the foundation stone of, the mortgage and notes of 1888. Without it there can be no pretense of a consideration for the latter. The agreement being void, imposing no personal liability or obligation, either at law or in equity, upon Mrs. Thompson, and creating no legal or equitable charge upon her estate, will not support a subsequent promise, even had she been discovert at the time of such subsequent promise. This is the settled doctrine of this court, and the established rule by the great weight of authority elsewhere. No mere moral duty, disconnected from all legal or equitable charge upon the person or estate of the wife, will support her subsequent promise.—*Vance v. Wells*, 8 Ala. 399; *Hetherington v. Hixon*, 46 Ala. 297; *Turlington v. Slaughter*, 54 Ala. 195; *McCravey v. Todd*, 66 Ala. 315; *Doss v. Peterson*, 82 Ala. 253; 2 Kent. Com., (7th ed.), marg. p. 465, to p. 586, and notes; 3 Am. & Eng. Encyc. of Law, 841, citing cases from Missouri, Indiana, Alabama, Vermont, North Carolina, Georgia and England. Some New York, Pennsylvania, and English cases are cited, as *contra*. Here there was not even a mere moral obligation or duty resting upon Mrs. Thompson, for she received, or had the benefit of, absolutely nothing by virtue of the agreement. Even those cases which give a broader meaning

[Troy Fertilizer Co. v. Prestwood.]

and operation to the term *"moral obligation"* than do our adjudications, were cases where the wife borrowed money or purchased and enjoyed goods, which in good conscience she ought to pay for; and her subsequent promises, when discovert, so to pay, were upheld on that account.—2 Kent, *supra,* note. To enforce a contract of a married woman, such as this, would be to set aside the great line of our decisions, built up through so many years, construing the married woman's laws of this State.

We are compelled to the conclusion that the demurrers ought to have been overruled; and a decree will be here rendered reversing the decretal order of the city court; overruling the demurrers to the bill, and remanding the cause.

Reversed, rendered and remanded.

In the case of *Lucy P. Hudgins, Extrx. et al. v. Adam E. Riser, et al.,* appeal from Birmingham City Court, number 576, Sixth Division, the application of appellees for a rehearing is granted upon the authority of the foregoing opinion; the judgment heretofore rendered by this court set aside, and the decretal order of the city court affirmed.

. BRICKELL, C. J., dissenting.