# Burton Lumber Co. v. Wilder.

*Action for Money Had and Received.*

1. *Pleading; conversion; action for money had and received; when it will lie.*—Ordinarily, an action for money had and received is not concurrent with an action of trover, but if the converted goods have actually been sold at a fixed price, an action for money had and received will lie against the wrongdoer, though he may not have actually collected the price therefor, but has accepted in lieu thereof the obligation of his vendee.

APPEAL from City Court of Birmingham.
Tried before Hon.. W. W. WILKERSON.
The facts appear in the opinion.

MOUNTJOY & TOMLINSON, for appellant.—An action for money had and received may be brought where the defendant has sold or disposed of property belonging to plaintiff, although defendant has not received cash therefor but has taken property or the obligations of third parties.—*Strickland v. Burns,* 14 Ala. 511; *Hughes v. Stringfellow,* 15 Ala. 324; *Barnett v. Warren & Co.,* 82 Ala. 557.

GREGG & THORNTON, for appellee.—An action for money had and received can not be maintained, when there has been a conversion, unless money, or something as money has been received for the property converted,

[Burton Lumber Co. v. Wilder.]

on a sale thereof.—*Crow v. Boyd's Admr.*, 17 Ala. 51; *Pike v. Bright*, 29 Ala. 332; *Fuller v. Duren*, 36 Ala. 73; *Copeland v. Touchstone*, 16 Ala. 333.

HEAD, J.—We will not decide whether defendant Wilder, can, legally, be regarded as an express purchaser of the shingles from the plaintiff, whereby plaintiff would be entitled to maintain an action on the contract for goods sold and delivered; for the position of the defendant, squarely and unequivocally taken, is, that he was not such a purchaser, and is not amenable to an action of that kind; from which position (being regarded as well taken, for the purpose of this case), it results, under the facts disclosed by the record, that defendant is liable to as large a recovery, by the plaintiff, under another count of the complaint, to-wit., the count for money had and received. The facts are, that the defendant contracted with one Bart, who had a lumber yard in Birmingham, Ala., for the sale and delivery by Bart to him of a car load of shingles to be delivered at Woodlawn, Ala., where the defendant had a lumber yard. The shingles were to be sold and delivered by Bart to defendant in payment *pro tanto* of an indebtedness owing by him to the defendant, of about $400. Bart did not have the shingles with which to fulfill his contract, and instead of acquiring them in his own right, he sent in an order to the plaintiff, at Baton Rouge, La., to sell and ship to defendant, at Woodlawn, Ala., a car load of shingles. Plaintiff received the order, "passed on Wilder's credit, accepted the sale and had the shingles shipped" by the Louisville, New Orleans & Texas Railway, who gave a bill of lading for the same, consigned to V. V. Wilder, Woodlawn, Ala., and charged them to defendant on its books, and afterwards (when is not shown) sent a bill of same to defendant demanding payment. Defendant testifies that on receiving the bill he replied that he did not know the plaintiff in the transaction; that he purchased the shingles from said Bart. It does not appear whether plaintiff received this letter or not. It is wholly indefinite when the correspondence took place—whether before or after defendant disposed of the shingles. The evidence is not carefully and fully drawn out, and the facts are not given us us in such fullness that we can consider whether

[Burton Lumber Co. v. Wilder.]

plaintiff is estopped, by silence and acquiescence after receiving defendant's letter repudiating its claim upon him, to now assert a claim against the defendant for the shingles. If there was such an estoppel it was upon the defendant to show the facts constituting it.

It appears that the car of shingles was intercepted, by said Bart, at Birmingham, in some way, and by him there delivered to defendant. The defendant gave Bart credit on his indebtedness, for $300 for the shingles, and afterwards (when does not appear) sold them to sundry parties, on 50 and 90 days time, on open accounts, none of which had been collected at the time of bringing this suit. The defendant's testimony shows the shingles were worth $300. As we have said, it does not appear when defendant sold the shingles, so that we can not know whether the 60 and 90 days accounts were due when this suit was brought or not, if that be a material inquiry. It is a fact, however, that about six months elapsed from the receipt of the shingles to the institution of the suit; and from the fact that defendant kept a lumber yard, at Woodlawn, and that he sold out to consumers these particular shingles, we must infer that he was engaged in the business of buying and selling lumber, including shingles, and that he bought these for the purposes of that trade. It will be presumed, therefore, in the absence of a showing by him to the contrary, that, after the lapse of six months, both the 60 and 90 days bills had matured. If they had not, the fact was peculiarly within his knowledge, and, if material, he ought to have shown it. Bart was not the agent of, and had no connection with the plaintiff, except that he would send orders for goods for people, if and they were accepted by the plaintiff, he was allowed a commission therefor, He had no authority to collect bills for goods sold. The defendant does not show, in his evidence, the amount for which he sold the shingles, but, as his testmony shows, they are worth $300, and that he gave Bart credit for that amoutt, it must be presumed he realized that sum for them, it being an undisputed fact that he had actually sold them. Thus it appears, that, if it is to be regarded that the defendant was not such a purchaser of the goods, as would render him liable to the plaintiff, on the count for goods sold and delivered, he and Bart were tortfeasors, guilty of a conversion of the shingles, the

property of the plaintiff; and the only question is, whether under the facts, as we have stated them, the defendant is liable, as a consequence of the tort (which the plaintiff waives by suing in assumpsit) for money had and received to the use of the plaintiff. The counsel for the defendant insists that he is not so liable, because he had not actually received the money for which he sold the goods. We think, under the authorities, and the facts of the case, the actual receipt of the money is not essential to the liability. It is unquestionably true, that assumpsit for money had and received is not, in general, a remedy concurrent with trover, when goods have been wrongfully converted; or rather it cannot in general, be employed to take the place of trover, to recover the value of the goods converted. Unless money has, actually, or as an implication of law, been received for the goods converted, the owner is confined to his remedy in tort. Thus, if the wrongdoer destroys, or appropriates to his own use or consumption, or merely unlawfully detains the goods, having received no money, or its legal equivalent, for them, he is not liable in assumpsit. In such case, there has been no ascertainment, or means of ascertainment, what the wrongdoer realized for the goods, except to apply to the case, pure and simple, the law of admeasurement of damages in the action of trover, and no more; virtually substituting the latter for the former remedy. *Crow v. Boyd*, 17 Ala. 51; *Pike v. Bright*, 29 Ala. 332; *Bradfield v. Patterson*, 106 Ala. 397; *Lytle v. Bowdon*, 107 Ala. 361. But when the wrong-doer has sold the converted goods, and received the money, or what he may choose to accept from the purchaser, as, and in the place of the money, he has thereby ascertained and fixed the amount realized by him for the goods, by a standard which would not apply to, or be received against the owner in, the action of trover. When a wrong-doer sells converted goods of another, he knows the owner may waive the tort and recover of him what he realized by the sale; and he cannot deprive the owner of this right by failing or declining to collect the purchase money, and in accepting in lieu thereof, the promise of the purchaser to pay it; but, accepting such promise, he will be conclusively deemed, as in favor of the owner, to have treated it as the equivalent of money. By selling

[Burton Lumber Co. v. Wilder.]

the goods for a price, he impliedly agrees to give the owner the benefit of it; and if he accepts anything else than money for the price, he does so at his own hazard.

In *Hughes v. Stringfellow*, 15 Ala. 324, a trustee of lands for the benefit of creditors was required by the deed to sell the land in part for cash, and the balance on a specified credit, in disregard of which he accepted notes of the purchaser, for the entire purchase money. A secured creditor brought assumpsit against him for money had and received, and this court said: "As the trustee elected to receive notes in lieu of money, in violation of the stipulation of the deed, he should not be allowed, after the time of credit prescribed by the deed had expired, to say he has no funds for the satisfaction of the demands he undertook to pay. The cases of *Hitchcock v. Lukens*, 8 Port. 333, and *Huckabee v May*, 14 Ala. 263, are authorities to show that he is liable upon the common counts. See also *Stewart v. Connor*, 9 Ala. 803, and *Strickland v. Burns*, 14 Ala. 515.

In *Strickland v. Burns*, 14 Ala. 515, *supra*, it was held that where one is the agent of another to collect two promissory notes, and disposes of them to his own use, one in the purchase of land, and the other of personal property, the land and other property may be regarded, in his hands, as money, and assumpsit maintained for it; and we quoted approvingly *Whitwell v. Vincent*, 4 Pick. 449, wherein it was held that if a person without authority sell goods belonging to another, and receive a negotiable note in payment, the owner may waive the tort and bring an action against him for money had and received, to recover the proceeds of the sale. *Andrews v. Robinson*, 3 Camp. 199, was also quoted, holding, that where an insurance broker, having received credit in an account with an underwriter for a loss upon a policy, whereupon the name of the underwriter was erased from the policy, the principal might maintain an action for money had and received against the broker, although he had not actually received any money from the underwriter; for the broker, having deprived the plaintiff of the remedy against the underwriter, and having received credit in account for money, he was estopped from saying he had not the sum in his hands for the plaintiff's use.

43

So in *Stewart v. Connor*, 9 Ala. 803, we held, that if a plaintiff in execution receives of the purchaser of property at a sale, thereunder to be made, a bill payable at a future day, the plaintiff cannot object to an action for money had and received, brought by the defendant in execution, upon the reversal of the judgment, that he received in payment of his debt a bill, instead of the money ; and we there quoted approvingly, *Hinkley v. Fowler*, 15 Maine 285, holding that where one sells property belonging to himself and others, and takes promissory notes therefor to himself alone, payable on time, and transfers the notes for his own benefit, an action will immediatly lie for money had and received. In *Huckabee v. May*, 14 Ala. 263, Grizzle conveyed property, by deed, to May, in consideration that May released a debt of $4,000 held by him against Grizzle, and assumed to pay the claims of sundry other creditors of Grizzle, and in an action against him, for money had and received, by one of the creditors, it was held to be no defense that he had not converted the property into money. The property was held to have been treated as money. We followed this ruling, in *Potts v. First Nat. Bank of Gadsden*, 102 Ala. 286. See also *Barnett v. Warren & Co.*, 82 Ala. 557 ; 1 Am. & Eng. Enc. Law, p. 888, § 11 and note.

In the present case, the defendant sold the shingles, on 60 and 90 days time, accepting the promises and obligations of the purchasers to pay the prices when due. He regarded these promises and obligations as valuable as the money itself, and treated them as money. He was at liberty to reduce them to actual money at any time after maturity. They were, from the time he received them, capable of use by him in the business affairs of life, by assignment as security for money, or purchase of property, and other purposes. We cannot see that the case is to be distinguished from one where written promises to pay the purchase money—promissory notes—are accepted. Either form of promise is obligatory and enforceable by law. In case of notes taken, higher evidence of the contract, as between buyer and seller, is merely accepted. No greater binding force attaches to the one form of promise than to the other. We think the principle we announce is analogous to the rule, that a sheriff, selling goods under execution, and

[Burton Lumber Co. v. Wilder.]

accepting the promise of the purchaser to pay in the future, instead of requiring payment in cash, is at once liable to the plaintiff in execution; and if there is a surplus of the bid, over the amount of the judgment, to the defendant in execution, for such surplus, in an action for money had and received. In neither action would he be heard to say he had not received the money. So, also, if a mortgagee sells on time, under a power which requires the sale to be for cash, for a sum greater than the secured debt, the mortgagor may, at once, maintain this action for the excess; and the mortgagee will not be permitted to say he did not have the money.

In view of what has been said, we hold that the defendant is liable, under the count for money had and received, in the present case. Under the evidence, his liability exceeds, in amount, that which the plaintiff really claims. Its real claim, as shown by the evidence, is for $273.90, with interest commencing 60 days after the shipment of the shingles, on April 25, 1891. We will reverse the finding and judgment of the city court, and render judgment here in favor of the plaintiff against the defendant for the sum of $369.75, and the costs of this court and the city court.

Reversed and rendered.