# Turnipseed *v.* Burton.

## *Assumpsit.*

(Decided April 9, 1912.   58 South. 959.)

1. *Sales; Value; Recovery.*—The facts stated, and it is held that under them plaintiff could recover of the defendant the value of the crates shipped.

2. *Appeal and Error; Objections Not Raised Below; Complaint.*— Where no demurrer was interposed raising the question in the

court below a complaint · will be deemed sufficient on appeal as against an objection that the crates received by the defendant were not alleged to be the property of the plaintiff; the complaint having alleged that plaintiff claimed of defendant a named sum with interest for that defendant received from plaintiff took into his possession and used for his benefit 7,500 fruit crates of the aggregate value of the sum claimed.

3. *Same Harmless Error; Verdict.*—Where there are good and bad counts in a complaint and the verdict is general, the verdict and judgment will be referred to the good count, rendering the bad counts immaterial.

4. *Property; Possession.*—The possession of personal property is prima facie evidence of title thereto.

5. *Pleading; Curing Defects; Pleading Over.*—While the allegations of the complaint are construed most strongly against the pleader on demurrer, a defect in such complaint may . be aided by a pleading by defendant in such a manner that an omission or informality is expressly or impliedly supplied, or rendered intelligible.

6. *Same; Curing Defect.*—A defective complaint is in some cases aided by intendment after verdict.

7. *Same; Aider by Judgment.*—If the complaint will sustain a judgment after verdict, it will be upheld on attack by motion in arrest, or on appeal, though it might have been held bad on demurrer.

8. *Judgment; Facts to Sustain.*—A judgment will be reversed where the facts appearing on the face of the complaint show no cause of action although there was no demurrer.

APPEAL from Bullock Circuit Court.

Heard before Hon. M. SOLLIE.

Assumpsit by W. B. Burton against D. C. Turnipseed. Judgment for plaintiff and defendant appeals. Affirmed.

RAY RUSHTON, W. M. WILLIAMS and L. M. MOSLEY, for appellant. The second count does not state a cause of action, and will not support a judgment even though there was no demurrer to the count, and hence, the court erred in giving the affirmative charge as to the count.—*St. Clair County v. Smith,* 112 Ala. 347; *L. & N. v. Williams,* 113 Ala. 402; *Jordan v. N. C. & St. L.,* 131 Ala. 220; *Kelly v. Burke,* 132 Ala. 235. Even if it had stated a cause of action, the evidence is in conflict, and hence, the court erred in giving the affirma-

tive charge.—*Peters v. Southern Ry.*, 135 Ala. 557; *White v. Farris,* 124 Ala. 470. It is an elementary principle that there must be a mutuality and a meeting of minds to make a contract.—*Brush E. Co. v. Montgomery,* 114 Ala. 433; *Boston I. Co., v. Potter,* 123 Ala. 28. Under the evidence the contract belonged to the Georgia Fruit Packing Company and Burton was not entitled to recover.—*Seals v. Edmondson,* 73 Ala. 295; *Brush Ala.* 295; *Brush E. Co. v. Montgomery, supra.*

BALL & SAMFORD, and STAKELEY & VARDAMAN, for appellee. Count 2 stated a cause of action, for against all the world but the true owner the party in possession of personal property is the owner in fact.—32 Cyc. 677; 2 Stew. 54; 12 Enc. of Evi. 539. One cannot accept goods from another and use them, and then refuse to pay for them on the ground that he never ordered them.—156 U. S. 200; 35 W. Va., 337; 18 W. Va. 771. Under these authorities the complaint sets out a cause of action, and under section 4144, Code 1907, the cause cannot be reversed. Any defects in the complaint were cured by the verdict.—7 Price 566; 9 East 476; 1 M. & S. 234; 16 Conn. 579; 79 Am. Dec. 278. Where there is nothing left to be done except the payment of money, recovery may be had upon the common count.—*Jones v. King,* 81 Ala. 287; *Martin v. Massey,* 127 Ala. 504. The plaintiff was entitled to recover under the common counts, and hence, any other rulings of the court were without inquiry, if error.—125 Ala. 178; 128 Ala. 556; 135 Ala. 490. The affirmative charge was given only as to the 2nd count, issue was joined as to the other counts, and evidence taken, and the verdict and judgment general, and will be referred to the counts which were good, and the presumption indulged that the judgment is correct. —*Richards et al. v. Steiner Bros.,* 44 South. 562.

[Turnipseed v. Burton.]

DE GRAFFENRIED, J.—1. The defendant, D. C. Turnipseed, is a peach grower, and resides at Peachburg, Ala. He has a large peach orchard near Peachburg, and ships his peaches to various markets. Some time in March 1909, he made a contract with the Georgia Fruit Package Company, of Ft. Valley, Ga., which is a corporation and manufactures and sells crates to be used in the shipment of peaches, by which contract the said company agreed to sell and deliver to him at Peachburg all the "six-basket crates" that he might need for the shipment of his peaches during that season. It is not necessary for us to go into the details of this contract, but the company agreed to ship him at least one car of crates per day when ordered by Turnipseed. He was to pay 13 cents for each crate delivered at his station. The Georgia Fruit Package Company was not able to ship Mr. Turnipseed as many crates as it had contracted to ship within the period and in the manner agreed upon, and by reason of this breach of its contract Turnipseed probably suffered large pecuniary damage, and, under the law, the fruit package company may be liable to him therefor.

One Crandall is the vice president of the Georgia Fruit Package Company, and appears to be its salesman and general manager. He made for the Georgia Fruit Package Company the above contract with Turnipseed and appears to have personally conducted all of the transactions which were had between Turnipseed and the Georgia Fruit Package Company with reference thereto.

The plaintiff, W. B. Burton, is also a manufacturer of six-basket crates, and does business at Montgomery, Ala., under the name of the "Burton Veneer Company," He had no knowledge of the contract of Turnipseed with

the Georgia Fruit Package Company, and had no connection whatever with that company.

Crandall, in addition to performing his duties as vice president, general manager, and salesman of the Georgia Fruit Package Company, also acts as a broker in selling basket crates for companies other than his own. In other words, as we understand the evidence, Crandall, with the knowledge and consent of the company of which he is vice president, frequently makes a sale of fruit crates, for other and rival companies, receiving from other and rival companies a broker's commission on the sales made by him as such broker for them. He was not interested in the business of W. B. Burton, and W. B. Burton had no connection whatever with the Georgia Fruit Package Company. Burton had an agreement with Crandall that he, Crandall, could sell crates on commissions as a broker for the Burton Veneer Company, the Burton Veneer Company to receive 11½ cents for each crate sold by him, and Crandall to receive as his commission for making such sales any excess. The Veneer Company, of course, had the right to reject or accept any order sent to Burton by Crandall as such broker, and Burton was liable to Crandall for commissions only upon the orders which were accepted and filled by the Burton Veneer Company. If the Veneer Company accepted an order sent by Crandall, the goods were shipped to the party named in the order as their purchaser, and the credit was extended to the party to whom they were shipped and not to Crandall.

During the peach season of 1910, Turnipseed became badly in need of crates. He made continuous calls upon the Georgia Fruit Package Company for the shipment of crates under its contract, and on one occasion went in person to Ft. Valley, Ga., and saw Crandall and other officers of the company, and urged upon them the

[Turnipseed v. Burton.]

necessity for the immediate shipment of a large number of crates. There is, at this point, some difference between Crandall and Turnipseed as to what occurred between them as to the crates, the subject of this litigation. Crandall says he told Turnipseed that, to help out, "I (Crandall) could get the Burton Veneer Company to furnish him several cars; that they would cost him 13 cents per crate delivered at his railroad station, but that the Burton Veneer Company were not in a position to ship crates unless they could secure cash for them on delivery, and that they would make draft for each car as shipped, and that he would have to pay for the crates when the drafts were presented, and then Turnipseed told him (Crandall) to order the crates from the Burton Veneer Company, and that Turnipseed agreed that he would pay the Burton Veneer Company's drafts." Turnipseed flatly denied the above portion of Crandall's testimony, stating that Crandall told him that he would be supplied with crates, saying that he need not be uneasy, and mentioned several parties from whom crates might be obtained, mentioning probably, among the number, the Burton Veneer Company, but denying that he ever authorized Crandall to buy crates from any one for him. As we understand this record, the above conflict in the testimony of Crandall and Turnipseed is absolutely immaterial. It is not claimed, and cannot be claimed, that there is any evidence in the record tending to show that the Burton Veneer Company knew anything about the contract between the Georgia Fruit Package Company and Turnipseed, or about the failure of that company to ship crates to Turnipseed under the terms of its contract. The Georgia Fruit Package Company was not in any sense the representative of the Burton Veneer Company, and, if the Georgia Fruit Package Company made any agreement or arrangement

with Turnipseed relative to shipments of crates by the Burton Veneer Company, the evidence plainly shows that the Burton Veneer Company never heard of such arrangement or agreement until after Turnipseed had received and used the crates of the Veneer Company in the shipment of his peaches. The evidence without dispute plainly shows that Crandall was merely a broker who made sales as such broker, and only as such broker, for the Burton Veneer Company. It also shows that the crates which were shipped by the Burton Veneer Company to Turnipseed were shipped under orders sent to the Veneer Company by Crandall, with instructions to draw for the amount of each shipment as the shipments were made. The evidence further shows without dispute that the Burton Veneer Company shipped three separate cars of crates to D. C. Turnipseed at Peachburg, and that, acting under instruction from Crandall as a broker, the plaintiff drew on the day each car of crates was shipped on the defendant at Union Springs for the value of each car at 13 cents per crate; that the credit was extended to the defendant by the plaintiff; that the drafts were held by the bank at Union Springs until after all of the crates had been shipped and had been used by Turnipseed in the shipment of peaches; and that when the drafts were returned, they were returned with the statement that Mr. Turnipseed declined to pay them because he was advised by a lawyer not to do so. Turnipseed knew that the three cars of crates were being shipped to him by the Burton Veneer Company from Montgomery, Ala., and that the cars were not being shipped from Ft. Valley, Ga., and he has been able to show by no evidence that the Georgia Fruit Company had any authority or right in any way to represent the Burton Veneer Company.

Considered in the light most favorable to Turnipseed, the evidence shows conclusively that, when the Burton Veneer Company received the order from Crandall to ship the crates to Turnipseed, Burton thought the order came from Turnipseed through Crandall; that Burton shipped the crates to Turnipseed and extended the credit to him in good faith, believing at the time that Turnipseed had authorized Crandall to make the order, and that Turnipseed actually received the crates and used them in his business without notifying Burton that Crandall had no authority from him to make the order; that, when Turnipseed was informed by Crandall that the crates would be shipped to him by Burton, Turnipseed thought that they would be shipped to him on the order of the Georgia Fruit Package, and on the credit of that company, in part fulfillment of his contract with the company, and was acting under that bona fide belief when he received them, and used them in his business and by their use was saved from inconvenience and loss. The plaintiff, under a misapprehension as to the facts, has parted with its crates, and Turnipseed, under a misapprehension of the facts, has received those crates and obtained, in money, their value. In this suit the law undertakes to settle the differences between the parties upon equitable principles, and the question is: "Does Turnipseed, in equity and good conscinece, owe Burton for the crates?"

Undoubtedly, so long as the principles laid down by the Supreme Court of Alabama in the case of *Burton Lumber Co. v. Wilder,* 108 Ala. 669, 18 South. 552, in which case the opinion was written by the late Mr. Justice Head, remain undisturbed, under the undisputed facts in this case, and every reasonable inference which can be drawn from them, the plaintiff is entitled to recover of the defendant the value of the crates which were

shipped to the defendant by the plaintiff. In the case of *Burton Lumber Co. v. Wilder supra,* the defendant, Wilder, who was a lumber dealer, contracted with one Bart, who was also a lumber dealer, for the sale and delivery by Bart to him of a car load of shingles, to be delivered at Woodlawn, Ala., where the defendant, Wilder, had a lumber yard. Bart was, in addition to being a lumber dealer, also a broker, who would send orders for goods to the plaintiff, and, if they were accepted by the plaintiff, was allowed a commission therefor, but had no authority to collect bills for goods sold by him as such broker for the plaintiff. It was understood between Bart and Wilder, when Wilder agreed to buy the shingles from Bart, that the value of the shingles should be credited upon a debt which was due by Bart to Wilder. Bart, instead of shipping the shingles himself to the defendant, Wilder, sent an order to the plaintiff, the Burton Lumber Company, to ship the car load of shingles to Wilder. The Burton Lumber Company, supposing that the order was from Wilder, shipped the shingles to him, and Wilder received them, thinking they were from Bart, the debtor, and sold the shingles in the course of his business, on credit, and credited Bart's account with the value of the shingles. In that case the Supreme Court held that Wilder, the defendant, was liable to the plaintiff, the Burton Lumber Company, for the value of the shingles, although at the time the suit was brought Wilder, who had sold the shingles on credit, had not collected from the purchasers of the shingles the money due him by them for the shingles. Certainly, if, under the facts in the above case, Wilder was liable to the Burton Lumber Company, then, under the facts of this case, Turnipseed is unquestionably liable to the Burton Veneer Company for the value of the crates which were shipped to him and for the value of which this suit was

[Turnipseed v. Burton.]

brought. If, under the facts of the above case, Wilder was not entitled to credit the value of the shingles which he obtained under his contract with Bart upon an indebtedness due him by Bart, then, under the facts in this case, Turnipseed is not entitled to credit the value of the crates which were shipped to him by the Burton Veneer Company upon any indebtedness which may be due to him by the Georgia Fruit Package Company. Following the decision of the Supreme Court in *Burton Lumber Co. v. Wilder, supra,* this court is constrained to hold that, under the undisputed facts in this case, the plaintiff was entitled to recover.

2. It is contended by the defendant that count 2 of the complaint does not state a cause of action, and therefore is insufficient to support a judgment, although no demurrer was interposed to that count in the court below. It is not contended that the first count is insufficient to support the judgment, and the question as to whether the second count does or does not state a cause of action is raised for the first time in this cause on this appeal.

The second count is as follows: "(2) Plaintiff claims of the defendant the further sum of $945, with interest thereon from the 16th day of July, 1910, for that the defendant received from the plaintiff, took into his possession, and used for his benefit 7,500 fruit crates of the aggregate value of $945; hence this suit." The defendant pleaded the general issue to the complaint as a whole with leave, by agreement, for either party to give in evidence all matters which might have been given in evidence under any properly drawn special plea. In other words, the issues, under the agreement as to the pleading, covered every possible defense which the defendant could have legally interposed to the complaint or either count of the complaint, and the bill of exceptions shows

that in the admission of evidence and in its rulings on the evidence the trial court, as well as the parties to this cause, so treated the issues.

At the conclusion of the testimony, the trial court, at the written request of the plaintiff, charged the jury that, if they believed the evidence, they should find for the plaintiff on the second count of the complaint. There was a general verdict in favor of the plaintiff, and the judgment of the court followed the verdict. It is contended by the defendant that count 2 does not state a cause of action against the defendant for money had and received, because it failed to allege that the crates which the defendant received from the plaintiff were the property of the plaintiff. Says the defendant: "It will be noted that the count does not aver any fact to show that the plaintiff was the owner of the fruit crates. For aught that appears in the count, the plaintiff had no interest whatever in these crates. For aught that appears, the plaintiff may have been a mere agent or he may have stolen them. The count not only fails to show that the plaintiff was the owner, but it fails to show even a possessory interest in the crates." If the defendant had seen proper to demur to count 2, and by its demurrer had properly raised the above objections to the technical sufficiency of the count, this court might reach a conclusion opposite to the one at which it has arrived on the questions now presented.

When a defendant demurs to a complaint, the allegations of the complaint are to be construed most strongly against the pleader. When, however, as in this case, he does not demur to the complaint, but appears and pleads to it, and the case is tried, under the pleadings, on its merits, an entirely different rule prevails. "A defect in pleading is aided, if the adverse party plead over to or answer the defective pleading in such a manner that an

omission or informality therein is expressly or implied-
ly supplied or rendered formal or intelligible." 1 Chitty
on Pleadings (16th Ed.) p. 703.

Where there has been a pleading over or answer to a
defective complaint and a verdict, such defective com-
plaint is also in some cases aided by intendment after
verdict. "The doctrine on this subject is founded on
the common law, and is independent of any statutory
enactment. The general principle upon which it depends
appears to be that where there is a defect, imperfection,
or omission in any pleading, whether in substance or
form, which would have been a fatal objection on demur-
rer, yet, if the issue joined be such as necessarily requir-
ed, on the trial proof of the fact so defectively or imper-
fectly stated or omitted, and without which it is not to
be presumed that either the judge would direct the jury
to give, or the jury would have given, the verdict, such
defect, imperfection, or omission is cured by the verdict."
1 Chitty on Pleadings (16th Ed.) p. 705.

It is undoubtedly true that it is the settled law of
this state that a judgment for plaintiff will be reversed
where the facts appear on the face of the complaint, and
show that no substantial cause of action was disclosed,
though the complaint was not demurred to. 3 Mayfield's
Dig. p. 1174, subd. 875; *St. Clair Co. v. Smith,* 112 Ala.
347, 20 South. 384; *Kelly v. Burt,* 132 Ala. 235, 31 South.
512. When the complaint is sufficient to support a judg-
ment, a motion in arrest of judgment after verdict will
not be granted, although the complaint may have been
subject to demurrer properly filed.—*O'Neal v. Simon-
ton,* 109 Ala. 167, 19 South. 412; *Gordon v. Hood,* Minor,
122.

It is, we think, undoubtedly true that a complaint
which is sufficient to support a judgment after verdict,
although it may have been subject to demurrer if prop-

erly filed, will be upheld whether attacked by motion in arrest of judgment or an appeal, and in this case we think count 2 is sufficient certainly to support a judgment after verdict. It is true that the count does not, in words, allege that the crates belonged to the plaintiff. It does, however, aver that the defendant received them from the plaintiff. If the defendant received them from the plaintiff, then the plaintiff was in possession of them when they went into the possession of the defendant. While it is true that count 2 does not negative in words that the plaintiff may have stolen the crates or that he may have had them as the agent of another, the law certainly indulges no presumption that he had stolen them or was in possession of them as the agent of another, on account of any defective allegation as to ownership in this count, on a motion in arrest of judgment after verdict or on appeal after issues joined on the pleas to the count and a verdict thereon in favor of the plaintiff. As the count alleges that the defendant received the crates from the plaintiff, and as no demurrer was interposed by the defendant to the count, we are of the opinion that, as the question is now presented to us, the count does allege, by intendment, that the plaintiff was the owner of the crates.

Possession of personal property is prima facie evidence of title thereto.—*Cobb v. Bryant,* 86 Ala. 316, 5 South. 586. Construing the count, therefore, as in our opinion it should be construed on this appeal, the count alleges that the plaintiff was the owner of the crates, and, this being true, it is evident that the count is sufficient to support a judgment after verdict.

3. In addition to the above, there were, as we have already stated, two counts to the complaint. It is admitted that the first count states a cause of action. The verdict of the jury, as we have already stated, was a gen-

[Thomas Frazier Lumber Co. v. Henson. et. al.]

eral verdict, and the judgment of the trial court follow-
ed the verdict.    When there are good and bad counts in
a complaint and the verdict is general, then, under the
law of this.State, the verdict and the judgment following
the verdict are referred to the good counts.

After a careful examination of this record, we have
been able to find no error of which the defendant has a
right to complain.    The judgment of the court below is
therefore affirmed.

Affirmed.