# McGowin *v.* Dickson.

*Assumpsit.*

(Decided May 15, 1913.   Rehearing denied June 19, 1913.
62 South. 685.)

1. *Process; Return; Form and Requisites.*—Under section 5301, Code 1907, a return on the process reciting that the officer served a copy of the complaint on defendant sufficiently showed that the copy served was left with defendant.

2. *Pleading; Construction.*—Where the sufficiency of a complaint was not tested by demurrer, its allegations are not to be construed with exactness against, but with liberality towards plaintiff; not to such a degree, however, as to give it a strained construction.

3. *Judgment; Default; Writ of Inquiry.*—Under sections 5325, and 5356, Code 1907, in a suit on the written contract for the sale of thirty-three shares of corporate stock providing that defendant would repurchase the stock on demand, where there has been a demand that the stock be repurchased, a promise by defendant to pay an agreed amount therefor, and a payment of part of such amount, judgment was properly entered by default, without writ of inquiry, as the written contract itself fixed the exact amount which plaintiff was entitled to recover.

4. *Same; Opening Default; Insufficiency of Complaint.*—Where the complaint was sufficient to support a judgment by default, a motion to set aside judgment will not be granted, although the complaint would have been subject to a properly filed demurrer.

5. *Damages; Assessment; Writ of Inquiry.*—A writ of inquiry is a writ which issues after a judgment by default has entered upon an unliquidated claim, directing the jury to inquire into the amount of plaintiff's demand, and to assess his damages.

6. *Corporations; Sale of Stock; Price; Tender.*—Where a defendant agreed to repurchase stock sold to defendant, if demanded, and upon a demand by plaintiff for the performance of the agreement to repurchase, defendant agreed to repurchase it at a specific price, paying a

[McGowin v. Dickson.]

part of the purchase price in cash, the contract was an executed contract of sale, and not an executory agreement, and plaintiff was entitled to sue for the price without tendering the stock; when there has been a sale of a specific chattel and the title has passed to the buyer, the duty is on the buyer to call for it, unless by the terms of the contract of sale the seller was under the duty to deliver it at some other than his own place of business, and if the buyer fails to call for it, the seller may sue for goods bargained and sold without tendering delivery.

7. *Same; Mode of Transfer.*—If intended to transfer the title. to transferee, the mere delivery of a certificate of capital stock passes the legal title to the transferee.

8. *Same; Tender; Sufficiency.*—A person who is under a contract to sell and deliver shares of stock, fulfills his obligation by tendering certificates of same duly endorsed by himself, and containing a power of attorney authorizing the purchaser to obtain a registry of the transfer on the corporate books.

9. *Sales; Price; Tender.*—Where a seller of goods receives a part of the purchase price with the understanding that he is to deliver the goods at the house of the purchaser and there receive the balance of the price, the seller is not entitled to the price, or to sue for goods, bargained and sold, until he takes the goods to the purchaser's house, tenders them, and demands the purchase price; and this notwithstanding title passes to the purchaser.

10. *Appeal and Error; Harmless Error; Amending Pleadings.*—The complaint examined and held sufficient to support a default judgment although demurrable possibly because it failed to allege that plaintiff was still willing to deliver, transfer, and assign the stock to defendant, and hence, that defendant was not prejudiced by the amendment to the complaint made after service of the original complaint on him in alleging that plaintiff thereby offered to surrender to defendant such stock duly transferred and assigned upon payment of the balance of the purchase price.

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Action by Allie E. Dickson against W. T. McGowin for breach of contract. Judgment by default, and defendant appeals. Affirmed.

The following is the complaint: (The portions underscored represent the amendment allowed in red ink, the other portions representing the original complaint.) "Plaintiff claims of defendant $5,340, with interest from the 19th day of August, 1912, for the breach of an agreement entered into by and between plaintiff and defendant on the 27th day of February, 1912, which was in

words and figures as follows: (Here follows an agreement reciting the sale by the party of the first part, McGowin, to the party of the second part, A. E. Dickson, of 33 shares of the capital stock of the English Carriage Company, at the sum of $5,940, and an agreement that, should the party of the second part ever desire to dispose of the stock, to resell to the party of the first part, the party of the second part first offering to the party of the first part the said 'shares and giving him 30 days' time in which to purchase said stock before offering it to any other person, with the further agreement that if anything should happen to bring about a severance of the business relations between the parties, McGowan will, within 12 months after the 27th day of February, 1912, purchase the stock from the party of the second part should he desire to make sale, and pay him for the same within 30 days after the desire to sell is made known to him.) Plaintiff avers that after the execution of said agreement *certain matters brought about a severance of the business connections between the parties to said contract, and thereafter* on, to wit, the 19th day of July, 1912, plaintiff notified the defendant of his desire to make sale of the stock mentioned in said agreement, and demanded of the defendant payment of the purchase money so stipulated in said agreement. Plaintiff further avers that the defendant promised to comply with the terms of said contract, and did on, to wit, the 19th day of August, 1912, pay to plaintiff the sum of $600, being on account of the $5,940, which defendant had promised to pay for said stock, *and which said stock duly transferred and assigned to defendant, the plaintiff offers to surrender to the defendant and will surrender to him upon the payment of said balance of the purchase price thereon;* but the defendant has nevertheless breached said contract

by refusing to pay the balance of said sum of $5,940, although the plaintiff has demanded the payment thereof and offered to transfer and assign said stock to the defendant."

STEVENS, McCORVEY & DEAN, for appellant. The court erred in rendering judgment by default without the execution of writ of inquiry to assess damages.— Secs. 5325, 5356, Code 1907. The claim as stated in the complaint is not for an amount promised to be paid for a consideration performed and received, but for damages for a breach of an agreement, and hence, should have shown tender of the chattels at the time and place.—24 A. & E. Enc. of Law, 1118-20; 35 Cyc. 31-33; Benjamin on Sales, sec. 1117. Hence, an effort to render a judgment final without the intervention of a jury was erroneous, although the correct measure of damages be adopted.—*Porter v. Burleson,* 38 Ala. 344; *M. F. I. Co. v. Fowler,* 76 Ala. 372; *Byre v. Haines,* Minor 286. The court errred in rendering judgment by default on the amended complaint immediately after making the amendment, and without notice to defendant.—23 Cyc. 741; 32 Cyc. 424; 6 Enc. P. & P. 51 and cases cited under each; *Ex parte Allen,* 166 Ala. 111. It must affirmatively appear of record that defendant was legally served with process at a proper prior period to authorize a judgment by default at the time it was rendered.—*Burt v. Frazer,* 157 Ala. 575. The return in this case, does not comply with the requirements.—Sec. 5301, Code 1907; 64 Tex. 47; 33 Tex. 133; 60 Pac. 608; 32 Cyc. 503, and cases there cited; 3 South. 36.

GREGORY L. & H. T. SMITH, for appellee. The action is founded upon an instrument in writing ascertain-

[McGowin v. Dickson.]

ing plaintiff's demand, and the original, as well as, the amended complaint sought to recover the purchase price of the stock, specifically ascertained and fixed by such written instrument.—*Mississippi L. Co. v. Smith,* 152 Ala. 541; *Brandon P. Co. v. Bostick,* 126 Ala. 252; *Montgomery F. Co. v. Hardaway,* 104 Ala. 112. The complaint, therefore, states a cause of action sufficient to support the judgment, and a reversal will not follow because the complaint might have contained defects which rendered it demurrable.—Sec. 4143, Code 1907; *Marion v. Ragenstein,* 98 Ala. 478; *Walker v. Mobile,* 31 Ala. 530. The damages were stated and agreed upon, and hence, there was no occasion for a jury.—*Tenn. Co. v. State,* 99 Ala. 197. The right to amend is statutory, and there was no error in permitting the amendment, and then entering default judgment, or if erroneous, it was harmless in this instance. —Sec. 5366-7, Code 1907; *Wilkinson v. Branham,* 5 Ala. 608; *Ganaway v. State,* 22 Ala. 774; *Ortez v. Jewett,* 23 Ala. 662; *Thomason v. Gross,* 42 Ala. 431; *M. & M. R. R. Co. v. Smith,* 51 Ala. 329. A judgment by default will not be reversed, although it is for more than sued for unless motion is first made in the trial court to set it aside.—*Ex parte Allen,* 166 Ala. 111; *Smith v. Dick,* 95 Ala. 311; sec. 4143, and authorities supra. The service of process was sufficient, and the presumption is that the writ was properly executed.—*Harris v. Clapp,* Minor 328; *McAbee v. Parker,* 78 Ala. 573; *Fears v. Thompson,* 82 Ala. 294; *Walker v. State,* 52 Ala. 192; *Colley v. Spivey,* 127 Ala. 189. In any event, the question cannot be first raised in this court.—*Baker v. Swift,* 87 Ala. 530; *Moore v. Fiquet,* 19 Ala. 236.

DE GRAFFENRIED, J.—The complaint as originally filed, and as it was amended before judgment was

rendered thereon, has been by the reporter above set out. The complaint *without* the italicized portions is the original complaint, and is the only complaint which was ever served upon the defendant. The complaint *with* the italicized portions is the complaint as it existed after it was amended, and is *the* complaint upon which the judgment was rendered by default against the defendant.

1. Section 5301 of the Code of 1907 provides that "The summons must be executed by the sheriff or other officer in any county, by leaving a copy of the summons and complaint with the defendant, which fact he must return with the process." The following is the only indorsement of the sheriff upon the original complaint in this case: "Rec'd Sep. 7th, 1912, & on Sep. 9th, 1912, I served a copy of the within complaint on W. T. McGowin. [Signed] T. T. Palmer, Sheriff, by M. 1. Goldsmith, D. S."

It is contended by appellant—defendant in the court below—that the above return does not show a legal service of the summons and complaint, and that therefore, as there has been no legal service, the trial court was powerless to enter up a valid judgment by default against the defendant. The statute says that the process may be executed by "leaving a copy * * * with the defendant," and as the above return only shows that the sheriff "served a copy" on the defendant, the defendant is of the opinion that the return does not show that he was legally served with the process. Says the defendant, for aught this court may know from the above return, the sheriff may have served the defendant by reading a copy of the summons and complaint to the defendant, instead of by leaving a copy with him, as required by the statute. In this contention we are not able to agree with appellant. The above return of

the sheriff shows with sufficient certainty that he left a copy of the summons and complaint with the defendant.—*Walker v. State*, 52 Ala. 192.

2. The defendant did not appear in the case and when the day arrived for the trial of his case he made default. Thereupon the plaintiff, by leave of the court, amended his complaint, as indicated by the italicized words in the complaint above set out. No notice of any sort was given the defendant of this amendment, and on said day judgment by default was taken in said cause for the amount sued for in the complaint, and the interest. The judgment was rendered without the execution of a writ of inquiry.

3. It is contended by appellant that the cause of action set up in the original complaint is the breach of an *executory*—not an *executed*—contract of sale, and that therefore, if the plaintiff was entitled to recover anything of the defendant under the original complaint, the only thing he was entitled to recover was the damages which the plaintiff suffered by reason of the breach by the defendant of said *executory* contract. In other words, the appellant contends that on the case as made by the original complaint the measure of the plaintiff's damages was the difference between the price which the defendant contracted to pay for the stock and the market value of the stock at the time and place of delivery, with interest, and that the plaintiff was *not* entitled to recover the *full* purchase price of said stock *less* the payment of $600, which the defendant had made thereon. There was no demurrer to the original complaint, and in passing upon this question the allegations of the complaint are *not* to be construed by us with exactness against the plaintiff, but *with* liberality towards him, but not with such degree of liberality as to give to the complaint a strained construction in the plaintiff's

favor.   So construing the complaint, the question is not without some difficulty, but, so construed, we think that the original complaint shows with reasonable certainty that it was brought by the plaintiff to recover the balance due him on the purchase price on an *executed* contract of sale made by him of the stock in question to the defendant.   A man who owns a part of the capital stock of a corporation holds the *certificates* merely as evidence of his ownership of the stock.   As between the *parties*, a mere delivery of a certificate of the capital stock of a corporation, *without more*, is sufficient to pass the title of the stock from the vendor into the vendee if such delivery was intended to operate as a transfer of the title to the stock from the vendor to the vendee.—*Duke v. Cahawba Nav. Co.*, 10 Ala. 82, 44 Am. Dec. 472; Angell & Ames on Corporations (11th Ed.) § 564, p. 600.

In the instant case the *particular 33* shares of stock which were the subject of sale were not, simply 33 *unascertained* shares of the stock of the English Carriage Company.   The particular 33 shares covered by the agreement were as definitely ascertained by the agreement as if they had been a wellknown horse specially bargained for, with his price agreed upon and a part of the purchase money paid.   The 33 shares of stock were *the* 33 shares which W. T. McGowin, on the 27th day of February, 1912, sold and delivered to A. E. Dickson for the sum of $5,940.   While each share of the capital stock of the English Carriage Company was similar in all respects to every other share, the fact that a particular 33 shares of said stock were specificially made the subject of the agreement has its influence upon the question as to whether the transaction between the plaintiff and the defendant was an executed sale or only an executory agreement for a sale.

[McGowin v. Dickson.]

A wholesale merchant might have 1,000 bolts of domestic identically similar in all respects. He might agree to sell to a retail merchant 100 bolts of that domestic at an agreed price, and the retail merchant might pay down 10 per cent. of the purchase money. If this contract was never executed it might be, with reason, asserted that only an executory agreement existed between the parties. If, however, when the trade was made a specific 100 bolts of that domestic had been segregated from the thousand bolts, and the negotiations had been confined to that particular 100 bolts and the price had been agreed upon, and one-tenth of the purchase price had been paid, then although the seller was left in possession of the goods, an entirely different question would be presented. "Where there is a sale of goods generally, no property in them passes till delivery, because until then the very goods sold are not ascertained. But when, by the contract itself, *the vendor appropriates to the vendee a specific chattel,* and *the latter thereby agrees to take that* specific chattel, and to pay the stipulated price, the parties are in the same situation as they would be *after* a delivery of goods in pursuance of a *general* contract. The very appropriation of the chattel is *equivalent to delivery by the vendor, and the assent of the vendee to take the specific chattel and to pay the price is equivalent to* his accepting possession. *The effect of the contract, therefore, is to* vest the property in the bargainee."— Benjamin on Sales (7th Ed. [Bennett's]), § 315, p. 268. "In *Gilmour v. Supple,* Sir Creswell Cresswell, in giving an elaborate judgment of the Privy Council says: 'By the law of England, by a contract for the sale of specific ascertained goods, the property immediately vests in the buyer, and a right to the price in the sel-

ler, unless it can be shown that such was *not the intention* of the parties.' "—Íd., § 317, p. 269.

It therefore seems apparent that the original complaint counted upon an executed contract of sale, and that the breach of the contract therein set up was simply the failure of the defendant, in accordance with his agreement, to pay the balance of the purchase money. Under the allegations of the original complaint the plaintiff was entitled to recover the amount which the defendant had agreed to pay him for his stock, less the $600 paid thereon, and the interest. Under the allegations of the complaint as amended the amount of the plaintiff's damages was the same amount—no more and no less—that he was entitled to recover under the allegations of the original complaint. The defendant suffered no injury by the allowance of the amendment, and on that account cannot be heard to complain.

4. Section 5325 of the Code of 1907 provides as follows: "In actions upon penal bonds or other writings, for the nonperformance of any covenant or agreement contained therein, the plaintiff may assign such breaches as he may deem proper, and verdict and judgment may be rendered for the plaintiff for such of the breaches as he may prove; and if judgment be rendered for the plaintiff by default or nil dicit, a writ of inquiry of damages must be awarded. Judgment shall in no case exceed principal and interest due on the instrument."

A writ of inquiry is a writ which issues after judgment by default has been entered upon an *unliquidated* claim, and directs the jury "to inquire into the amount of plaintiff's demand, and assess his damages."—40 Cyc. p. 2867, note. The damages growing out of the class of suits contemplated by the above statute are unliqui-

dated damages, and for that reason it is necessary, and the statute requires, that a jury assess them.

Section 5356 of the Code of 1907 is as follows: "In all actions founded on any instrument of writing, ascertaining the plaintiff's demand, if judgment by default, nil dicit, or on demurrer, be rendered for the plaintiff, such judgment may be entered up by the clerk, under the direction of the court, without the intervention of a jury; and the clerk must compute the interest, and, in case of a bill of exchange, the damages, if any be due thereon."

The above statute dispenses with the necessity of a writ of inquiry in cases covered by it because the damages in such suits are *liquidated*—fixed by the contract sued on—and the intervention of a jury in such cases would be useless. In the instant case the writing ascertained the exact amount of the plaintiff's demand.

While, if the defendant had appeared in court and pleaded the general issue, the plaintiff would have been required to prove the execution and delivery of the written contract set up in the complaint, and would also have been required to prove, as a condition precedent to a recovery, that the defendant bought the stock as alleged in the complaint, *all this proof* became unnecessary when judgment by default was rendered; and, as the writing set up in the complaint fixed with certainty the amount of the judgment to which the plaintiff was entitled, in this particular case a writ of inquiry would have performed a useless ceremony. The *judgment* by default *fixed the right* of the plaintiff to recover. The *writing fixed* the exact amount which the plaintiff was *entitled* to recover. The trial court therefore committed no error, for which the judgment in this case should be reversed, because of the fact that it

failed to require a jury, under a writ of inquiry, to ascertain the amount of the plaintiff's damages.

The judgment of the court below is affirmed.

Affirmed. All the Justices concur, except DOWDELL, C. J., not sitting.

## ON REHEARING.

DE GRAFFENRIED, J.—1. In the above opinion we called specific attention to the following: First, that the stock, the *subject* of the sale, was in *existence* when the sale was made; second, that the stock, the subject of the sale, was *specifically identified* to the same extent as if it had been a *well-known horse;* third, that the *exact price* of the particular stock was fixed by the parties when the sale was agreed upon; fourth, that a part of the purchase price was paid in *cash*. The above being true, the contract of sale was an executed, not an executory, contract. The seller, so long as he retained possession of the stock, had a *lien* upon the stock for the unpaid purchase money, but he also had his right of action therefor.

"The sale of a specific chattel on credit, though that credit may be limited to a definite period, transfers the property in the goods to the vendee, *giving the vendor a right of action for the price,* and a lien *upon the goods,* if they *remain in his possession,* till that price be paid." The above quotation is taken from the language of Lord Denman, C. J., in the leading case of *Martindale v. Smith,* 41 Eng. Common Law Reports (1 Adolph & Ellis, N. S.) 593; s. c., 1 Q. B. 395. In that case reference is made to the case of *Tarling v. Baxter,* 6 B. & C. 360, in which the same principle is announced. "Where there is a sale of goods generally, no property in them passes until delivery, because until then the *very* goods

sold are not *ascertained;* but where, by the contract it-
self, the vendor appropriates to the vendee a specific
chattel, and the latter thereby agrees to take that spe-
cific chattel, and to pay the stipulated price, *the par-
ties are then in the same situation as they would be
after a delivery of goods in pursuance of a general con-
tract.*"   Parke, J., in *Dixon, et al. v. Yates, Kaye, Bond,
and Proctor,* 5 B. & Ad. 313.   The above quotations from
*Martindale v. Smith, supra,* and ·*Dixon, et al. v. Yates,
Yayne, Bond, and Proctor, supra,* completely cover this
case.   They speak in plain language the *law,* and show,
conclusively, that, in a case *presenting the facts of the
instant case,* a tender on the part of the vendor is not
a necessary prerequisite to a suit by him for the pur-
chase price.—Benjamin on Sales (7th [Bennett's] Ed.)
791.

"The principle at common law is that the goods have
become the property of the buyer, and that the vendor
has agreed to take for them the *buyer's promise to pay
the price.*   If, then, the buyer fail to pay, the vendor's
remedy is limited to an action for the *breach* of *that*
promise; the damages for the breach being the amount
of the price promised, to which may be added interest."
—Benjamin on Sales, supra.

"It is said that when the contract of sale is complete,
and the vendee does not take away the goods, the ven-
dor may recover the price in indebitatus assumpsit, as
the law does not require therefor that complete delivery
or that actual receipt which would be necessary to de-
feat the vendor's lien for the price, or his right of stop-
page in transitu, or which would be required to take
the case out of the statute of frauds.   And more recent-
ly it has been declared that there may be a bargain and
sale of goods sufficient to transfer the title, and thus
to support an action for goods *bargained* and *sold,* with-

out any such delivery as will amount to a transfer of possession."—Newmark on Sales, § 223.

"There may be a bargain and sale of goods sufficient to transfer title, and thus to support an action for goods bargained and sold, without any such delivery as will amount to a *transfer of possession.* The former is quite consistent with the vendor's retaining a lien for the price, and thus retaining possession till the price is paid."—*Frazier v. Simmons,* 139 Mass. 531, 2 N. E. 112.

"Thus when the contract of sale is complete, and the vendee does not take away the goods, the vendor may recover the price in indebitatus assumpsit. The law does not require that complete delivery, that actual receipt of the goods, which will be necessary to defeat the vendor's lien for the price, or his right of stoppage in transitu, or which would be required to take the case out of the statute of frauds."—*Morse v. Sherman,* 106 Mass. 430.

It seems clear that when there has been a sale of a *specific chattel,* and the *title* has passed from the *seller* to the *buyer,* then unless the seller, *by the terms of the contract of sale,* is under a duty to the buyer to deliver possession to the buyer at some place *other* than the place of business of the seller, it is the duty of the buyer to call for the article at the place of business of the seller and there pay for it and accept it. If he fails to do so, then the seller may bring his action against the buyer for goods *bargained* and *sold.* At common law there was much technical difference between an action for goods *bargained* and *sold* and an action for goods *sold* and *delivered,* and the distinctions which the common-law judges drew between the two forms of action, and which they so thoroughly understood, have led to confusion, at times, in courts where a different or a less exacting system of pleading obtains. Courts, we

I hink, sometimes have attempted to apply—or have actually applied—principles applicable only to an action for goods *sold* and *delivered* to an action for goods *bargained* and *sold,* and have thus brought about confusion as to when an action may by a seller be brought against a buyer for the price of goods sold before the actual receipt by the buyer of the goods. If A. goes into the store of B. and select a *particular* hat and agrees to pay B. $6 for it, and pays B. $1 down on it, then the hat at once becomes the property of A. If A. leaves the hat with B. and promises to come back and get it, but fails to do so, B. owes A. no further duty, with reference to the hat, except to keep it for him. B. is under no duty to take the hat to the house of A. and tender the hat to him. If A. fails to come for the hat, then B. may bring his action for goods *bargained* and *sold,* for the balance due on the hat. If, on the other hand, when A. buys the hat and pays B. a dollar down on it, the understanding is that B. is to send the hat to the house of A. and there deliver it and receive the balance of the money, then, while the title passes, B. does not become entitled to his money, or his action for goods *bargained* and *sold,* until he carries the hat to A.'s house and there tenders the hat to A. and demands his money. In such a case B.'s complaint against A. for goods bargained and sold must allege a *tender* by B. of the hat under the terms of the contract. Under the above facts, if B. had sued A. for goods *sold* and *delivered,* a common-law judge would not have permitted him to recover, because he would have held that there had been no delivery. The same judge, however, would have permitted a recovery in an action for goods *bargained* and *sold.*

While the distinctions drawn by common-law courts were sometimes narrow, they were founded upon rea-

son. These judges stood close to the fountains of justice, and when the *form* of *action* was appropriate, these judges required no allegation in a complaint which reason did not support. They only required that a tender of the specific article sold should be alleged in a complaint for goods bargained and sold, when the contract of sale contemplated that *after* the sale the seller should deliver the article to the buyer at the buyer's *residence,* or at some place *other* than the seller's place of business. When the *form* of the action was for goods *sold* and *delivered,* then, unless a delivery was shown, no recovery could be had, for in such *form* of action, as is said in Noy's Maxims, quoted approvingly by Benjamin in his work on Sales (4th Amer. Ed.) § 314: "If I sell my horse for money I may keep him until I am paid, but I cannot have an action of debt until he be delivered, yet the property of the horse is by the bargain in the bargainee or buyer." When, however, the *form* of the action was for goods bargained and sold, then the rule that "the sale of a specific chattel on credit, though that credit may be limited to a definite period, transfers the property in the goods to the vendee, giving the vendor a right of action for the price, and a lien upon the goods, if they remain in his possession, till that price be paid," which we have above quoted in the language of Lord Denman in *Martindale v. Smith, supra,* was applicable, and was applied by the courts. Of course, if the contract of sale required the plaintiff to carry the article to the defendant and make a delivery of it at some point other than the plaintiff's place of business, then it was necessary for the plaintiff to show in his complaint that he had made a tender of the article, and that the defendant had failed to receive and pay for it, or show some reason why a tender had not been made.—2 Mechem on Sales, § 1674.

2. "In respect of the place of delivery, where no place is agreed upon by the parties, it is the general rule that the articles sold are to be delivered at the place where they are at the time of the sale. The store of the merchant, the shop of the manufacturer or mechanic, and the farm or granary of the farmer, etc., must be the place where the demand and delivery are to be made when the contract is silent as to the place."—2 Mechem on Sales, § 1124.

In the original opinion we pointed out that a mere delivery of the certificate of the capital stock of a corporation is sufficient to pass the legal title from the vendor to the vendee if such delivery is intended to operate as a transfer of the title to the stock from the vendor to the vendee. This proposition was announced in *Duke v. Cahawba Nav. Co.*, 10 Ala. 82, 44 Am. Dec. 472, and has repeatedly been upheld by the later decisions of this court.—*Fisher v. Jones,* 82 Ala. 117, 3 South. 13; *Campbell v. Woodstock Iron Co.,* 83 Ala. 351, 3 South. 369; *Thompson v. Hudgins,* 116 Ala. 93, 22 South. 632. In other words, it is the settled law of this state that in order to pass the legal title and ownership of stock in a corporation from one person to another, no more formality is required than is required in the transfer of title to any other sort of personal property from one person to another.—*Thompson v. Hudgins, supra.* Such stock is a mere chattel the title to which may pass by *delivery* merely, just as the title to any other chattel may pass by delivery merely.

The above being true, the original complaint, given a reasonable construction favorable to the plaintiff, as it should in this proceeding be construed, is a declaration for the price of chattels *bargained* and *sold.* It not only shows a *bargain* and *sale,* but it shows a demand for the *price* with an offer, not only to *deliver* the stock, but it

goes further than that, it shows that the plaintiff has offered to transfer and assign said stock to the defendant. The complaint, as originally filed, was sufficient to support a judgment, but it may have been subject to *demurrer* because of its *failure* to allege that the plaintiff was *still willing* to deliver and to transfer and assign to the defendant the said stock. This *demurrable* defect the amendment was intended to supply, and did in fact supply. In other words, the original complaint was for the price of goods *bargained* and *sold,* and so is the complaint as amended.

Construing the allegations of the complaint both as originally filed, and as amended, favorably towards the plaintiff, as it is our duty to do, the complaint in its original and amended form is sufficient to support a judgment by default for the price of goods bargained and sold, and it is the settled law of this state when "a complaint is sufficient to support a judgment, a motion to set aside the judgment will not be granted, although the complaint may have been subject to demurrer properly filed."—*O'Neal v. Simonton,* 109 Ala. 167, 19 South. 412; *Gordon v. Hood,* Minor, 122; *Turnipseed v. Burton,* 4 Ala. App. 612, 58 South. 959.

3. Undoubtedly the rule, as stated by Mr. Cook in his work on Corporations (volume 1 [6th Ed.], 335), that "a person who is under contract to *sell* and *deliver* shares of stock may fulfill the obligation on his part by tendering to the vendee certificates of stock, duly indorsed by himself, and containing a power of attorney authorizing the vendee to obtain a registry of the transfer on the corporate books" meets the requirements of the laws of practically all the states.

In the *instant* case the stock was already *sold,* and the plaintiff was only under the obligation to *deliver,* and in his complaint he alleges that he was ready and

willing to *"transfer* and *assign"* the stock to the plaintiff, and that he had offered to do so. Under the terms of the sale of stock in the instant case it was the duty of the defendant, after the plaintiff had made demand upon him for the purchase price of the stock and had offered to transfer and deliver the stock to him, to call on the plaintiff for the stock.

Mr. Thompson, in his work on Corporations (volume 4 [2d Ed.], § 4110) lays it down as a general rule that "an action cannot be maintained for the price of stock where there has been no repudiation of the contract unless a valid tender is made and kept good." He says, however, in the very next section (viz., § 4111) : "Title to stock may vest short of full payment and delivery where that is the intent of the parties to the contract. It has been held, under a provision in a contract for the sale of stock, to be paid for at a certain time, that the title passed to the purchaser at the time of the contract, though there was a separate agreement that the seller should retain the certificate as security for the price— and he cites the case of *Sherwood v. Graham,* 106 Minn. 542, 118 N. W. 1011, in which a recovery was had upon an executed contract of sale of stock, although no stock was ever delivered because, under the terms of the sale, no delivery was to be had until the purchase money was paid. In fact the sale of stock in a corporation in this state is like the sale of any other chattel, and is to be governed by the same rules as the sale of any chattel, viz., by the contract which is made by the parties themselves.

4. Many of our states have independent statutory regulations of their own governing the manner in which the title to stock in corporations may be transferred. In many stock transactions the regulations of boards of trade have entered into them and formed a part of

them. It cannot, therefore, be expected that all of the decisions of courts of last resort upon the subject above discussed will be found to be uniform, or that a rule de-- clared in one state has necessarily any application to a sale of stock in another state. The law of this state is as we have above declared it to be; and, so far as the particular transaction under discussion is concern- ed, the contract between the parties has the same degree of finality, and is governed by the same rules as would have governed it if the defendant, when he paid to the plaintiff the cash installment, had made to the plain- tiff a promissory note, payable on demand, for the bal- ance of the purchase price of the stock, and had left the stock in the possession of the plaintiff pending the payment of said note.

5. Confessedly the defendant owes the plaintiff the money for which the judgment in this case was render- ed. The plaintiff confesses that the defendant owns the stock, and that he holds the stock for him. The defend- ant, upon the payment of the purchase money, will be- come entitled to demand of and receive from the plain- tiff the stock to which the defendant already holds the legal title and the possession of which the plaintiff holds for the defendant.

What *injury, in a legal sense,* therefore, occurred to the defendant when the complaint in this case was amended we are unable to discover. In fact the amend- ment was but an assurance to the court and to the de- fendant that, when the judgment was taken, the plain- tiff *still* held the stock for the defendant, and operated as an assurance to the court and the defendant that the plaintiff set up no claim to the legal title to the stock, and that upon the payment of the judgment he could demand it of and receive it from the plaintiff.

The application for a rehearing is overruled.